## In re NORTHAMPTON CORPORATION, Debtor.

### Bankruptcy No. 83-03644G.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 30, 1984.

Bruce D. Shuter, Joseph A. Dworetzky, Warren T. Pratt, Drinker Biddle & Reath, Philadelphia, Pa., for debtor, Northampton Corp.

Leon F. Forman, Earl T. Stamm, Wexler, Weisman, Forman & Shapiro, P.C., Philadelphia, Pa., for movant, Manufacturers Hanover Trust Co.

Richard B. Bland, Lancaster, Bland, Eisele & Herring, Hyattsville, Md., for holders of first and second Deeds of Trust.

Michael Sigal, Simpson, Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Company, debtor.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether the debtor's chapter 11 petition should be dismissed or converted to a chapter 7 proceeding and whether the debtor is entitled to take discovery before we reach the merits of the aforesaid motions. Under the circumstances of this case, we will allow the debtor to take discovery only for the limited purpose hereinafter set forth. Consequently, we will reserve decision on the instant motions pending the outcome of the debtor's discovery.

The facts of the instant case are as follows:[1] On March 9, 1981, Manufacturers Hanover Trust Company ("Manufacturers Hanover") and Northampton Corporation ("the debtor") entered into an Agreement ("Agreement") under which the debtor represented that it intended to file a plan of reorganization under chapter 11 of the Bankruptcy Code ("the Code") which would provide that the approximately $25,000,000 secured obligation then owed to Manufacturers Hanover would be reduced to the principal amount of $2,000,000 upon which

interest would be payable thereafter at the rate of 1% per annum before maturity.[2] As represented in said Agreement, the debtor, along with three of its subsidiaries and a related partnership, filed their chapter 11 petitions with this court on March 16, 1981. On April 7, 1981, with the express acceptance of Manufacturers Hanover, we confirmed the Joint Plan of Reorganization ("1981 Plan") filed by the debtor, its subsidiaries and the related partnership in those 1981 chapter 11 proceedings which were jointly administered.[3] Pursuant to the Agreement and the confirmed 1981 Plan, Manufacturers Hanover and the debtor entered into a Correction Seventh Amendment of Modification Agreement-Deed of Trust and of Deed of Trust and Partial Release ("Seventh Amendment of Deed of Trust").[4]

Under this Agreement, the 1981 Plan, and the Seventh Amendment of Deed of Trust, the debtor received from Manufacturers Hanover an advance in the cash sum of $1,500,000, the debtor and its subsidiaries surrendered to Manufacturers Hanover certain of their real property and the debtor's $25,000,000 obligation to Manufacturers Hanover was reduced to $2,000,000. The debtor retained approximately 175 acres of undeveloped raw land located in Prince George's County, Maryland, known as "Largo Centre." Largo Centre was retained by the debtor subject to the aforementioned Seventh Amendment of Deed of Trust, securing the debtor's remaining obligation to Manufacturers Hanover in the principal amount of $2,000,000 with the express understanding that the debtor would have only until April 28, 1983, within which to sell, develop, and/or refinance Largo Centre and to pay Manufacturers Hanover the $2,000,000 in full.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. *See* Exh. A to Manufacturers Hanover's motion to dismiss and/or convert.

3. Copies of the 1981 Plan and the Confirmation Order are attached to Manufacturers Hanover's motion to dismiss and/or convert as Exhibits B and C respectively.

4. *See* Exh. D to Manufacturers Hanover's motion to dismiss and/or convert.

The debtor failed to pay its $2,000,000 obligation to Manufacturers Hanover when said debt matured and became due and payable on April 28, 1983. On September 2, 1983, as a result of the debtor's default, Manufacturers Hanover commenced a foreclosure action against Largo Centre which action was stayed by the filing of a second petition under chapter 11 of the Code by the debtor on September 16, 1983.

There are two additional deeds of trust, both senior to that of Manufacturers Hanover, encumbering Largo Centre and securing additional obligations of the debtor in the total principal amount of approximately $500,000. These senior obligations are also due and payable and in default. On or about August 29, 1983, the holders of one of the senior deeds of trust also commenced a foreclosure action against Largo Centre, and a public sale of said realty was scheduled pursuant thereto for September 20, 1983. However, this sale was also stayed by the filing of the debtor's second petition.

The debtor's Schedules of Assets and Liabilities ("Schedules") establish that the debtor has essentially no assets other than Largo Centre, except for the capital stock of three (3) subsidiary corporations, having no value. The debtor's only remaining assets consist of a checking account in the amount of approximately $3,500 and receivables from two (2) subsidiaries in the amount of approximately $2,800. The debtor's schedules also reveal that its general unsecured debt is held by no more than seven (7) creditors in the total amount of approximately $8,700. Of this amount, in excess of $5,000 is allegedly owed to the debtor's parent, approximately $3,300 is owed to four (4) creditors for legal and accounting fees and the remaining two (2) creditors are owed less than $200.

The debtor's Statement of Financial Affairs discloses that, within a year prior to the filing of the instant petition, the debtor transferred substantially all of its remaining assets other than Largo Centre (consisting of approximately $962,000 in cash) to its corporate parent, Dominion Holdings, Inc. ("debtor's parent"). Most of this money ($850,000) was subsequently transferred to the debtor's parent as "dividends."

On October 17, 1983, Manufacturers Hanover filed a motion to dismiss the debtor's current chapter 11 petition or, in the alternative, to convert the said petition to a petition under chapter 7 of the Code. Thereafter, the debtor filed interrogatories and a request for production of documents against Manufacturers Hanover, who filed objections thereto. On November 17, 1983, the debtor filed a motion to compel responses to the interrogatories and the request for production of documents. A hearing was subsequently held on both the motion to dismiss and/or convert and the motion to compel discovery.

The debtor chooses to characterize the issue before us as simply being a question of whether the debtor's second petition was filed in "good faith". Accordingly, the debtor contends that we should focus primarily on the two traditional lines of inquiry that continually surface in the long line of "good faith" cases—does the debtor intend to reorganize and is reorganization feasible? It is clear, however, that the instant case is not a typical "good faith" case. None of the cases relied on by the debtor involve facts even remotely similar to the case at bench.

The unalterable and dispositive fact in the case *sub judice* is that the current $2,000,000 indebtedness owing to Manufacturers Hanover represents an express obligation imposed upon the debtor by the terms of the confirmed 1981 Plan. Nevertheless, the debtor, in essence, asserts that that obligation can now be discharged in the pending chapter 11 proceeding.[5] To accept such rationale would, as Manufacturers Hanover points out, allow a debtor to continuously circumvent the provisions of a

---

**5.** The debtor contends that as long as it succeeds in attaining confirmation of a plan that is not a liquidating plan and engages in business after consummation of the plan, it is entitled to a discharge of all its debts including the $2,000,000 obligation owing to Manufacturers Hanover.

confirmed plan by filing chapter 11 petitions *ad infinitum.* Moreover, it is obvious that a discharge of the $2,000,000 obligation would be tantamount to a modification of the confirmed 1981 Plan. In this regard, we point out that a confirmed plan cannot be modified if said plan has been substantially consummated. Section 1127(b) of the Code provides:

> (b) ... [The] reorganized debtor may modify ... [its] plan at any time after confirmation of such plan and before substantial consummation of such plan....

11 U.S.C. § 1127(b)(1979).

Section 1101(2) of the Code defines the term "substantial consummation" as follows:

> (2) "substantial consummation" means—
>
> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2)(1979).

We have no doubt that the 1981 Plan was substantially consummated within the meaning of the foregoing section. The properties of the debtor and its affiliates (except Largo Centre) were transferred to Manufacturers Hanover, the $25,000,000 obligation to Manufacturers Hanover was reduced to $2,000,000, the debtor received an advance of $1,500,000 from Manufacturers Hanover and the debtor's other creditors provided for under the 1981 Plan were paid.

■ The binding effect of a confirmed plan is set forth in section 1141(a) of the Code, which provides:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in, the debtor, whether or not the claim or

interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a)(1979).

Moreover, *Collier on Bankruptcy* states that:

> [A] plan is binding upon all parties once it is confirmed and all questions which could have been raised pertaining to such plan are *res judicata* ... [A]n order confirming a plan is a judgment *in rem* in the sense that it is a determination of the rights and liabilities created by the plan, binding upon all parties in interest (emphasis in original).

5 Collier on Bankruptcy, ¶ 1141.01 [1] at 1141–5, 1141–6 (15th ed. 1983).

Further, once a plan has been substantially consummated, "rights are vested and cannot be modified." 3 Norton Bankruptcy Law and Practice, § 64.02 at 2 (1981).

■ In light of the prior confirmed 1981 Plan, we conclude that the debtor's present intention to reorganize and the feasibility of any such reorganization are completely irrelevant to the case at hand.

■ The debtor also contends that it did not default under the 1981 Plan. While the debtor admits that it has defaulted under its mortgage to Manufacturers Hanover, it maintains that said default does not constitute a default under the 1981 Plan. The debtor argues that Manufacturers Hanover "has not pointed to any language in the Plan which makes a default under the mortgage a default under the Plan." We find no validity in this argument and reject it.

Section 4.01 of the 1981 Plan provides that Manufacturers Hanover is to be treated as set forth in the written Agreement between the parties which is attached to the 1981 Plan. Paragraph 4 of the written Agreement states that the $2,000,000 obligation of the debtor to Manufacturers Hanover is secured by a deed of trust on Largo Centre and that such obligation "shall be payable in full" two years after the trans-

fer of the remaining real property to Manufacturers Hanover under said plan. Furthermore, the Seventh Amendment of Deed of Trust provides in paragraph 2 that "... the outstanding principal amount of $2,000,000 ... shall be due and payable on April 28, 1983 ..." It is beyond question that the 1981 Plan, the Agreement and the Seventh Amendment of Deed of Trust were all integral portions of one and the same transaction,—the 1981 Plan of reorganization of the debtor. Manufacturers Hanover has not been paid the $2,000,000 and, therefore, we conclude that the debtor has defaulted under the terms of the confirmed 1981 Plan.

Finally, the debtor maintains that it is entitled to take discovery before we reach the merits of Manufacturers Hanover's motion to dismiss and/or convert and that it should be allowed to present factual testimony in support of its contention that the instant proceeding was filed in good faith.

The debtor has alleged, in short, that its ability to refinance or develop Largo Centre was adversely affected by the conduct of Manufacturers Hanover. In its brief, the debtor alleges that:

> Following the reorganization, [the debtor] actively sought to develop Largo Centre. However, at the time that [the debtor] was pursuing development of its property, [Manufacturers Hanover] owned more than 1,000 acres in the immediately surrounding area, including parcels to the north, south, east and west of Largo Centre. [Manufacturers Hanover's] failure to develop or take action with *its* properties hindered [the debtor's] ability to develop Largo Center. [The debtor] lost at least one potential development partner after that company had conversations with [Manufacturers Hanover] and decided to pursue work with [Manufacturers Hanover] in developing [Manufacturers Hanover's] lands, and in light of that decision, determined that working with [the debtor] would be a conflict of interest (emphasis in original).[6]

In its Offer of Proof, the debtor specifically alleges that:

13. During 1982 [the debtor] was actively pursuing discussions with several real estate development companies regarding their possible involvement in the development of Largo Centre. One such company was Spaulding & Slye, a major real estate developer with headquarters in Boston and a regional office in Washington, D.C. On or about December 7, 1982, Spaulding & Slye broke off its negotiations with [the debtor]. At that time, the regional manager of the Washington, D.C. office of Spaulding & Slye informed [the debtor] during a telephone conversation that he had met the day before with senior management in Boston; that Spaulding & Slye could not work with [the debtor] on Largo Centre because Spaulding & Slye had decided to pursue possible work with the [Manufacturers Hanover] on the land surrounding Largo Centre; and that Spaulding & Slye did not believe it could represent to [Manufacturers Hanover] that it would have no conflict of interest in working with [Manufacturers Hanover] while working with [the debtor] on Largo Centre. Spaulding & Slye was aware at that time, as [the debtor] had previously discussed with them and as specifically reflected in this conversation, that [Manufacturers Hanover] held a short-term note and deed of trust on Largo Centre which would soon become due.

Bankruptcy Rule 1017 provides that a "proceeding to dismiss a case or convert a case to another chapter is governed by Rule 9014." Bankruptcy Rule 9014, in turn, provides that certain disputes are deemed to be "contested matters" and that in any contested matter, unless the court directs otherwise, the ordinary rules of discovery contained in Bankruptcy Rules 7026 and 7028 through 7037 apply.

Hence, the issue is whether we should permit discovery and, if so, to what extent.

---

**6.** *See* debtor's Brief In Opposition to Motion of Manufacturers Hanover Trust Company to Dismiss or Convert at pages 11, 12.

A careful review of the record leads us to conclude that discovery should be permitted for the sole purpose of determining whether Manufacturers Hanover wrongfully interfered with the debtor's attempt to develop Largo Centre. Any discovery beyond that point would, in our view, constitute an impermissible circumvention of the confirmed 1981 Plan.

To reiterate, we hold today that the debtor is bound by the terms of the confirmed 1981 Plan and that any obligations of the debtor arising from the prior confirmed plan cannot now be discharged in a second chapter 11 proceeding. Further, we conclude that the debtor has, in fact, defaulted under the terms of the 1981 Plan. Nevertheless, we will permit the debtor to engage in discovery of Manufacturers Hanover for the sole purpose of determining whether Manufacturers Hanover wrongfully or improperly interfered with the debtor's freedom to "sell, develop, and/or refinance" Largo Centre. Consequently, we will reserve final judgment on Manufacturers Hanover's motion to dismiss the chapter 11 case or convert it to a chapter 7 proceeding pending resolution of the limited discovery described above.