Leon S. Forman, Wexler, Weisman, Forman & Shapiro, P.C., Philadelphia, Pa., for Manufacturers Hanover Trust Co.

Raymond K. Denworth, Jr., Joseph A. Dworetzky and Warren T. Pratt, Drinker, Biddle & Reath, Philadelphia, Pa., for Northampton Corp.

## In re NORTHAMPTON CORPORATION.

Civ. A. No. 84–3632.

United States District Court, E.D. Pennsylvania.

Nov. 28, 1984.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

The appellant, Northampton Corporation, has appealed, pursuant to 28 U.S.C. § 158(a), from an order of the United States Bankruptcy Court for the Eastern District of Pennsylvania granting the motion of the appellee, Manufacturers Hanover Trust Company, to convert the appellant's case under chapter 11 of the Bankrupcty Code of 1978 (the Code) to one under chapter 7 of the Code. The issue is that of whether the bankruptcy court erred in concluding that cause existed under 11 U.S.C. § 1112(b) to convert the appellant's case to one under chapter 7 of the Code.

Section 1112(b) provides that on the request of a party in interest, and after notice and a hearing, the bankruptcy court may, if cause exists, either convert a case under chapter 11 of the Code to one under chapter 7 of the Code or dismiss it, whichever is in the best interest of the creditor

and the estate. Section 1112(b) further provides nine conditions which constitute cause.[1] These nine conditions, however, are not an exclusive list of what may constitute cause as is made clear by a House Report's description of the section,[2] which states:

Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests. The court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate, only for cause.... The list of [nine conditions] is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 405–406 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6361, 6362.

## I. Factual Background

The appellant is a District of Columbia corporation engaged in the business of real estate investment and development. In 1981, the appellant held title to more than 1,000 acres of unimproved land in Prince George County, Maryland and was indebted to the appellee in the amount of $25,000,000 which was secured by liens on the appellant's land. On March 9, 1981, the parties entered into an agreement which required the appellant to file a voluntary petition under chapter 11 of the Code and to have the bankruptcy court confirm a plan of reorganization substantially as provided by the agreement within seven months. The agreement, in pertinent part, provided that the appellant would transfer to the appellee all of its Prince George's County land except approximately 175 acres known as Largo Center. The appellee was to pay the appellant $1,500,000 and cancel the Indebtedness other than $2,000,000 of such Indebtedness.... Such remaining Indebtedness of $2,000,000 shall continue to be secured by the lien of the deed of trust ... but limited to Largo Center, shall bear interest at the rate of 1% per annum, payable in full on a date two years after the transfer of the Assets.... All of the foregoing actions described in this paragraph shall be consummated at a closing to be held within 15 days after Confirmation of the Plan.

The appellant, along with three of its subsidiaries and a related partnership, filed a chapter 11 petition on March 16, 1981. Section 4.02 of their plan for reorganization provided that:

Pursuant to the Agreement, and subject to Confirmation of the Plan, Manufacturers shall (a) purchase all real estate assets of the Debtors except a parcel of approximately 175 acres known as Largo Center, together with the personal property assets of the Debtors related to such real estate assets (collectively, the "Assets"), (b) pay $1,500,000 cash to Debtors ..., and (d) cancel all indebtedness of the Reorganized Debtors to Manufacturers in excess of $2,000,000. Man-

---

1. Section 1112(b) of the Code provides that cause includes the:

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
(2) inability to effectuate a plan;
(3) unreasonable delay by the debtor that is prejudicial to creditors;
(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;
(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
(7) inability to effectuate substantial consummation of a confirmed plan;
(8) material default by the debtor with respect to a confirmed plan; and
(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

2. Section 102(3) of the Code provides further support for the proposition that the nine conditions listed in Section 1112(b) are not exhaustive. Section 102(3) provides that " 'includes' and 'including' are not limiting."

ufacturers and NC [Northampton Corporation] shall execute and deliver a Seventh Amendment of Modification Agreement—Deed of Trust and of Deed of Trust, which document shall provide for the continuance of the lien presently held by Manufacturers on the remaining real property of NC to secure such remaining indebtedness to Manufacturers. The summary contained in this section 4.02 is qualified in its entirety by reference to the Agreement, a copy of which is attached hereto as Exhibit A.

On April 7, 1981, the bankruptcy court confirmed the plan for reorganization (1981 Plan). Pursuant to the 1981 Plan, the parties entered into a Correction Seventh Amendment of Modification Agreement—Deed of Trust and of Deed of Trust and Partial Release. Paragraph 2 of the Correction Seventh Amendment set April 18, 1983 as the date when the principal amount of $2,000,000 was due from appellant and provided that the Deed of Trust was a lien on Largo Center to the extent of the principal amount and interest. On May 13, 1981, the bankruptcy court entered a final decree ordering that the appellant's estate was closed. The court stated:

1. All of the transactions contemplated by the Debtors' Joint Plan of Reorganization have been consummated;

2. As a result of the consummation of the transactions contemplated by the Plan:

. . . . .

C. All Class I secured claims [those held by the appellee] have been treated as provided by Sections 4.01 and 4.02 of the Plan.

The appellant failed to pay the $2,000,000 debt when it became due on April 28, 1981. On September 2, 1982, the appellee commenced a foreclosure action against Largo Center which was stayed on September 16, 1983 by the appellant's filing of a second petition under chapter 11 of the Code.

The appellee filed a motion for dismissal of the chapter 11 proceeding or, in the alternative, for conversion of the chapter 11 proceeding to a chapter 7 liquidation,

alleging that the institution of the chapter 11 proceeding by the appellant represented "an abuse of the bankruptcy process and is therefore in bad faith" and that "[t]here is no reasonable likelihood of rehabilitation or reorganization" of the appellant. The appellee objected to the interrogatories and the request for documents filed by the appellant. After the appellant filed a motion to compel responses to the interrogatories and the request for production of documents, the bankruptcy court held a hearing on both motions.

II. The Bankruptcy Court's Opinions

The bankruptcy court rejected the characterization of the issue before it "as simply being a question of whether the debtor's second petition was filed in 'good faith.'" *In Re Northampton Corporation*, 37 B.R. 110, 112 (Bankr.E.D.Pa.1984) (Northampton I). Rather, the court concluded "that the debtor's present intention to reorganize and the feasibility of any such reorganization are completely irrelevant to the case at hand." *Id.* at 113. The basis of this conclusion was the court's finding that:

The unalterable and dispositive fact in the case *sub judice* is that the current $2,000,000 indebtedness owing to Manufacturers Hanover represents an express obligation imposed upon the debtor by the terms of the confirmed 1981 Plan. Nevertheless, the debtor, in essence, asserts that the obligation can now be discharged in the pending chapter 11 proceeding. To accept such rationale would, as Manufacturers Hanover points out, allow a debtor to continuously circumvent the provisions of a confirmed plan by filing chapter 11 petitions *ad infinitum*. Moreover, it is obvious that a discharge of the $2,000,000 obligation would be tantamount to modification of the confirmed 1981 Plan. In this regard, we point out that a confirmed plan cannot be modified if said plan has been substantially consummated.

*Id.* at 112–113 (emphasis in original, footnote omitted).

As support for its statement that a confirmed plan cannot be modified after it has been substantially consummated, the court relied on 11 U.S.C. § 1127(b). This section provides that a reorganized debtor may modify a plan "at any time after confirmation of such plan and before substantial consummation of such plan...." The court noted that the 1981 Plan was substantially consummated, as that term is defined by 11 U.S.C. § 1101(2),[3] because "[t]he properties of the debtor and its affiliates (except Largo Center) were transferred to Manufacturers Hanover, the $25,000,000 obligation to Manufacturers Hanover was reduced to $2,000,000, the debtor received an advance of $1,500,000 from Manufacturers Hanover and the debtor's other creditors provided for under the 1981 Plan were paid." *Northampton I* at 113.

The court also cited 11 U.S.C. § 1141(a) as additional support for its conclusion that a confirmed plan cannot be modified after it has been substantially consummated. Section 1141(a) deals with the effect of confirmation[4] and *Collier on Bankruptcy* commented that in accordance with this section:

> [A] plan is binding upon all parties once it is confirmed and all questions which could have been raised pertaining to such plan are *res judicata.* .... [A]n order confirming a plan is a judgment *in rem* in the sense that it is a determination of the rights and liabilities created by the plan, binding upon all parties in interest.

5 Collier on Bankruptcy, ¶ 1141.01[1] at 1141-5, 1141-6 (15th ed. 1983) (emphasis in original, footnotes omitted).

In considering the appellant's motion to compel, the bankruptcy court concluded that discovery should be permitted on the sole issue of whether the appellee wrongfully interfered with the debtor's attempt to develop Largo Center and summarized that:

> we hold today that the debtor is bound by the terms of the confirmed 1981 Plan and that any obligations of the debtor arising from the prior confirmed plan cannot now be discharged in a second chapter 11 proceeding. Further, we conclude that the debtor has, in fact, defaulted under the terms of the 1981 Plan. Nevertheless, we will permit the debtor to engage in discovery of Manufacturers Hanover for the sole purpose of determining whether Manufacturers Hanover wrongfully or improperly interfered with the debtor's freedom to "sell, develop, and/or refinance" Largo Center. Consequently, we will reserve final judgment on Manufacturers Hanover's motion to dismiss the chapter 11 case or convert it to a chapter 7 proceeding pending resolution of the limited discovery described above.

*Id.* at 115.

Following discovery by the appellant, the appellee filed a renewal of its motion and the bankruptcy court held a hearing. The court reiterated its conclusion that a debtor cannot affect or modify the claims of creditors which were fixed through substantial consummation of a confirmed chapter 11 plan by filing a subsequent chapter 11 petition and plan and held that:

> [s]ince the debtor is attempting to use the chapter 11 proceeding predominantly

---

3. Section 1101(2) of the Code provides that: "substantial consummation" means:
 (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
 (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
 (C) commencement of distribution under the plan.

4. Section 1141(a) of the Code provides that, with two exceptions not applicable to the case at bar:
 the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any equity acquiring property under the plan, and any creditor or equity security holder of, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

for the purpose of affecting the claims of [Manufacturers] Hanover and other creditors [5] which were unsuccessfully addressed in the confirmed plan in the prior chapter 11 proceedings, and since we stated that these claims may not now be affected or modified by the current chapter 11 case, we conclude that "cause" under § 1112(b) is present.

*In re Northampton Corporation,* 39 B.R. 955, 956–957 (Bankr.E.D.Pa.1984) (Northampton II).[6]

### III. The Appellant's Appeal From The Bankruptcy Court's Order

The appellant advances three arguments in support of its contention that the bankruptcy court erred in holding that cause existed under Section 1112(b) of the Code. This Court does not find any of these arguments convincing.

The appellant first contends that the bankruptcy court erred in concluding that the 1981 Plan was substantially consummated instead of concluding that it was fully consummated. The appellant bases its argument on the bankruptcy court's final decree in the appellant's 1981 bankruptcy proceeding which, as previously mentioned, provided that "[a]ll of the transactions contemplated by the Debtors' Joint Plan of Reorganization have been consummated [and that] [a]s a result ... [a]ll Class I secured claims [those held by the appellee] have been treated as provided by Sections 4.01 and 4.02 of the Plan." The appellant notes that the final decree is res judicata as to all matters which might have been raised and were not expressly left open by the court. *See Prudence Corp. v. Ferris,* 323 U.S. 650, 65 S.Ct. 539, 89 L.Ed.

528 (1945); *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); 13A *Collier on Bankruptcy,* ¶ 10–309.04[4] at n. 11 (14th ed. 1977). The appellant then argues that the bankruptcy court by the final decree conclusively determined that the 1981 Plan was fully consummated and therefore that it was impossible to modify the plan since it had been fully executed and was a *"fait accompli."*

The appellant's position is not persuasive because of Section 4.02 of the 1981 Plan. That section incorporated by reference the prior agreement into which the parties had entered and which provided that "[a]ll of the foregoing actions described in this paragraph shall be *consummated* at a closing to be held within 15 days after Confirmation of the Plan." (emphasis added). The actions referred to included the cancellation of all indebtedness of the appellant to the appellee in excess of $2,000,000 and the securing of the remaining $2,000,000 debt by a lien on Largo Center providing that the $2,000,000 debt would bear interest at the rate of 1% per annum, payable in full on a date two years after the transfer of the assets as defined in the agreement. Thus, these actions were to be deemed "consummated" after the closing and were what the bankruptcy court concluded in its final decree of May 13, 1981 had been "consummated."

 Contrary to the appellant's suggestion, the obligation to pay the $2,000,000 debt on April 28, 1983 was not an action which was deemed consummated by either

---

**5.** In addition to the appellee's deed of trust, there are two additional deeds of trust encumbering Largo Center in the total principal amount of $500,000 which are both senior to the appellee's deed of trust and which are due and payable and in default. The appellant's Schedule of Assets and Liabilities reveals that its general unsecured debt is held by no more than seven creditors in the total mount of $8,700 and that of this amount, in excess of $5,000 is allegedly owed to the appellant's parent, approximately $3,300 is owed to four creditors for legal

and accounting fees, and less than $200 is owed to the remaining two creditors.

**6.** The bankruptcy court also held that "the debtor has received more than an adequate opportunity to conduct discovery in hopes of uncovering facts which support its claims that [Manufacturers] Hanover interfered with debtor's attempts to improve and develop its realty. It has been unsuccessful." *In re Northampton Corporation,* 39 B.R. 955, 957 (Bankr.E.D.Pa.1984). This holding is not challenged by the appellant in its appeal.

the 1981 Plan or the final decree. It was, however, an obligation under the 1981 Plan assumed by the appellant.[7] This obligation was set forth in the 1981 Plan, the agreement into which the parties had entered, and the Seventh Amendment of Deed of Trust which, as the bankruptcy court had properly recognized, "were all integral portions of one and the same transaction,—the 1981 Plan of reorganization" of the appellant. *Northampton I*, 37 B.R. at 114. Unlike the cancellation of all indebtedness in excess of $2,000,000 and the securing of the remaining debt by a lien on Largo Center, the payment of the $2,000,000 was an obligation assumed by the appellant under the 1981 Plan which neither the parties by their agreement nor the bankruptcy court by its final decree found to be consummated on May 13, 1981. Rather, the obligation to pay the $2,000,000 debt could not be consummated until it had been paid and the appellant not having paid the debt when it became due on April 28, 1983, was in default on the 1981 Plan.[8]

■ The appellant next contends that the bankruptcy court erred in concluding that modification of a confirmed plan may not be sought after it has been substantially consummated. It notes that 11 U.S.C. § 1127(b) which provides that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan ..." does not expressly prohibit modification of a plan after substantial consummation and argues that Section 1127(b) should be interpreted in accordance with Section 229(c) of the Bankruptcy Act of 1898. Section 229(c) provided that "[w]hen a plan has been substantially consummated ..., the plan may not thereafter be altered or modified if the proposed alteration or modification materially and adversely affects the participation provided for any class of creditors or stockholders by the plan." The appellant therefore asserts that the bankruptcy court should not have concluded that the appellant could not modify the 1981 Plan unless it found that the appellee would be materially and adversely affected by the failure to pay the $2,000,000 debt when it came due on April 28, 1983. To interpret Section 1127(b) otherwise, the appellant contends, leads to an unreasonable and unjust result because any default under a confirmed and substantially consummated plan would preclude further relief under Chapter 11, regardless of the social and economic cost or the effect on the creditors.

This Court must interpret Section 1127(b) according to the intent of its authors and not with a view to selecting a more desirable public policy. *Potomac Electric Power Company v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 283–284, 101 S.Ct. 509, 517, 66 L.Ed.2d 446 (1980); *Robzen's, Inc. v. United States Department of Housing and Urban Development*, 515 F.Supp. 228, 232 (1981). The Supreme Court in *Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969) noted that "[a] committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." In discerning Congress' in-

---

7. The appellant had argued to the bankruptcy court that it did not default under the 1981 Plan. It admitted that it had defaulted under its mortgage to the appellee but maintained that that default did not constitute a default under the 1981 Plan. The bankruptcy court found no validity in the appellant's argument and rejected it on the basis of the language of the agreement into which the parties had entered, the 1981 Plan, and the Seventh Amendment of Deed of Trust. The court wrote that "Manufacturers Hanover has not been paid the $2,000,000 and, therefore, we conclude that the debtor has de-

faulted under the terms of the 1981 Plan." Northampton I at 114.

8. The appellant also contends that it should have been allowed to present extrinsic evidence to aid the bankruptcy court in construing the 1981 Plan because the terms concerning the maturity date of the deed of trust were ambiguous. This Court does not find the terms of the 1981 Plan to be ambiguous and therefore, the bankruptcy court did not err in refusing to consider extrinsic evidence.

tent with respect to Section 1127(b), this Court is persuaded by the clear and unambiguous language of the House Report that the bankruptcy court did not err in holding that the modification of a confirmed plan may not be sought after it has been substantially consummated. The House Report stated that:

> Subsection (b) permits modification of a plan after confirmation under certain circumstances. The modification must be proposed before substantial consummation of the plan.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 411 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6367.

The appellant finally contends that "the dispositive issue on this appeal is whether the bankruptcy court erred in concluding ... that [Manufacturers Hanover] Trust Company's claim could not be satisfied and discharged under chapter 11." In resolving this issue, the appellant contends that the bankruptcy court should have considered a plan of reorganization which the appellant had filed.

Initially, it must be noted that the bankruptcy court did not draw any conclusion concerning the merits of the plan of reorganization which the appellant had submitted, because the dispositive issue was whether cause existed under 11 U.S.C. § 1112(b) to convert the appellant's case to one under chapter 7 of the Code and not whether the appellee's claims could be satisfied and discharged under the appellant's proposed plan. This Court concludes that the bankruptcy court did not abuse its discretion or make an error of law in using its equitable powers to convert the appellant's chapter 11 case to a chapter 7 case[9] and, therefore, an appropriate Order affirming the order of the bankruptcy court follows.

---

**9.** The appellee contends that the bankruptcy court could have concluded from the facts which it found that cause existed either because the appellant's chapter 11 petition was a "blatant misuse of the Bankruptcy Code" or because pursuant to 11 U.S.C. § 1112(b)(8), there was a "material default by the debtor with respect to a confirmed plan." The bankruptcy court, however, did not address these conclusions and this Court will not address whether either conclusion is warranted because it is not within the Court's appellate jurisdiction as provided by 28 U.S.C. § 158(a).