In the Matter of MABLETON–BOOPER ASSOCIATES, Debtor.

INTEGON LIFE INSURANCE CORPORATION, Movant,

v.

MABLETON–BOOPER ASSOCIATES, Respondent.

Bankruptcy No. A91–62246–WHD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 6, 1991.

Thomas M. Byrne, S. Perry Thomas, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for movant.

Joseph J. Burton, Jr., Leon S. Jones, Atlanta, Ga., for debtor/respondent.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion for Relief from Stay filed by Integon Life Insurance Corporation ("Integon") on April 24, 1991. It is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(G) (1991). The Court held a hearing on the Motion on April 29, and the parties filed supplemental briefs. Having considered these briefs, the evidence at the hearing, and the record in the case file, the Motion is GRANTED for the reasons set forth below. The following constitutes the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT

Integon holds a security deed creating a first priority security interest in an office building located at 5701 Mableton Parkway in Cobb County, Georgia (the "Property") owned by Mableton–Booper Associates ("Debtor"), a Georgia limited partnership. After Debtor defaulted under the terms of the deed, it filed a Chapter 11 petition on June 30, 1986, and a reorganization plan was confirmed on April 17, 1987. Under the plan Debtor would cure the arrearages owed to Integon and reinstate the terms of the original loan agreement, including monthly interest payments of $3,708 on a principal balance of $445,000, and payment of the principal balance by December 1, 1990.

Debtor initially made the required payments, but seven months before the December 1, 1990 due date it sought a restructuring of its obligations to Integon. Integon did not respond to these overtures. Accordingly, when Debtor defaulted on an interest payment, Integon accelerated the debt and advertised for a foreclosure sale.

Debtor then filed a second Chapter 11 petition on February 5, 1991.

Debtor cites a number of allegedly changed circumstances that necessitated the second filing. First, it claims that Tom Burke, a former property manager, mismanaged the Property due to the use of illegal drugs, accepted poor quality tenants, and did not maintain the Property properly, resulting in a loss of tenants and an increase in expenses. In late 1989 or early 1990, Debtor replaced Mr. Burke with Ed Leinbach's management company. Second, Debtor undertook substantial repairs to the building and infrastructure of the Property, including a new roof and air conditioner within the past year. Third, the principal balance of the debt came due. Finally, the market for office space had softened, causing a more competitive leasing environment. Integon counters that the default and new filing was caused solely by the failure of Debtor's partners to make sufficient loans or capital contributions to make payments as promised in the first plan.

Debtor filed a new reorganization plan and disclosure statement on April 29, 1991. The plan proposes to pay creditors in full and to pay interest to Integon at a "blended" rate of 7.2%, which is higher than the 6.7% "blended" rate in the original contract. Debtor notes that Mr. Herbert Somekh, a general partner of Debtor with a net worth of over $40 million, has agreed to guarantee the interest payments to Integon under the new plan.

## CONCLUSIONS OF LAW

Section 362(d)(1) of the Bankruptcy Code authorizes this Court to grant relief from the automatic stay "for cause," 11 U.S.C. § 362(d)(1) (1991). In the present case Integon asserts that "cause" exists because the present case was filed in bad faith after Debtor defaulted[1] under the terms of its first reorganization plan. Specifically, Integon argues that Debtor's general and limited partners stopped making loans and capital contributions that they promised to make in Debtor's disclosure statement accompanying the first plan, and that this refusal to perform was inexcusable. Debtor counters that Integon was to blame because it spurned Debtor's attempts to renegotiate the debt. The Court does not need to resolve these counter-accusations because it concludes that Debtor's filing of the second Chapter 11 petition after defaulting on the prior plan was improper.

The validity of serial Chapter 11 filings was first addressed in *In re Northampton Corp.*, 37 B.R. 110 (Bankr.E.D.Pa.1984), *later proceeding*, 39 B.R. 955 (Bankr.E.D.Pa. 1984), *aff'd*, 59 B.R. 963 (E.D.Pa.1984). In that case the debtor failed to make a payment to a secured creditor under the terms of its first confirmed Chapter 11 plan, and when the creditor initiated a foreclosure action the debtor filed a second Chapter 11 petition to stay the proceedings. When addressing the creditor's motion to dismiss or convert the second case, the Bankruptcy Court declared that the issue had nothing to do with bad faith, 37 B.R. at 112. Instead, it cited Bankruptcy Code § 1141(a), which makes the terms of a confirmed reorganization plan binding on all parties, 11 U.S.C. § 1141(a) (1991),[2] and § 1127(b), which allows for modification of a confirmed plan only before it is substantially consummated, 11 U.S.C. § 1127(b) (1991),[3]

---

**1.** There is no question that Debtor failed to make an interest payment as required by the first plan and that it therefore defaulted under the plan's terms. Debtor's assertion that Integon refused to renegotiate the terms of the plan has no bearing on the existence of this default.

**2.** According to § 1141(a),

the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a) (1991).

**3.** Section 1127(b) provides that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and *before substantial consummation of such plan,*" 11 U.S.C. § 1127(b) (1991) (emphasis added).

*Id.* at 113. The court concluded that the new filing was tantamount to a prohibited post-confirmation modification of the first plan, *Id.* at 113, reasoning that if the obligations of a prior Chapter 11 proceeding could be discharged in a new Chapter 11 case, a debtor could "continuously circumvent the provisions of a confirmed plan by filing Chapter 11 petitions *ad infinitum*," *Id.* at 112–13. It therefore found cause to convert the case to one under Chapter 7, 39 B.R. at 956. *See also In re AT of Maine, Inc.*, 56 B.R. 55 (Bankr.D.Me.1985).[4]

The Seventh Circuit Court of Appeals took another direction in *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir.1989), however. In that case the Circuit Court was faced with a debtor that filed a second Chapter 11 petition for the purpose of liquidation after a first Chapter 11 reorganization attempt failed, and it stated matter-of-factly that "serial Chapter 11 filings are permissible under the Code if filed in good faith," *Id.* at 866–67. The case is readily distinguishable from *Northampton* because the court relied on the fact that the failed first plan was followed by a liquidation plan. The Circuit Court refused to reverse the Bankruptcy Court's finding that the second filing was not an attempt to modify the terms of the plan but instead was a good faith admission that the debtor was unable to operate as a going concern, *Id.* at 868. Still, the Circuit Court noted that while § 109(g) of the Code specifically prohibits serial bankruptcy filings by individuals and family farmers,[5] Congress failed to make mention of repeat corporate debtors in that provision, implying that they are exempt from the statutory constraint, *Id.* at 870.

In *In re Casa Loma Assocs.*, 122 B.R. 814 (Bankr.N.D.Ga.1991), the Bankruptcy Court also refused to find a *per se* rule against serial Chapter 11 filings. Judge Murphy acknowledged the tension between § 1127(b), which prohibits modification of confirmed and substantially consummated plans and which provided the foundation for the *Northampton* ruling, and the absence of reference to corporate debtors in § 109(g), which "evidences an intent not to close the courthouse doors to Chapter 11 debtors who, as a result of unanticipated changed circumstances, are unable to fully perform under a prior plan," *Id.* at 818. Thus she invoked the "changed circumstances" test, finding that a debtor was allowed to file a second reorganization plan where the failure of the first plan was attributable to factors that were unanticipated at the time the first plan was confirmed, including vandalism, rental concessions and dispossessory proceedings resulting from the debtor's acceptance of tenants with lower socioeconomic backgrounds in order to maintain cash flow; concealed fire damage and structural defects needing repair; and a new federal law prohibiting discrimination against children which caused vacancies in the debtor's formerly all-adult apartment complex, *Id.*

■ This Court agrees with Judge Murphy's analysis. On one hand, §§ 1127(b) and 1141(a) impose an important element of finality in Chapter 11 proceedings, allowing parties to rely on the provisions of a confirmed reorganization plan. On the other hand, the confirmation decision, which precedes the operation of § 1127(b), is based on certain factors indicating the probability of the debtor's successful reorganization, and of course the ultimate goal of Chapter 11 is to promote successful reorganizations of troubled corporate debtors. Where un-

---

**4.** In addition to following the logic and ruling of *Northampton*, the Bankruptcy Court in *AT of Maine* made a separate finding that the debtor's second reorganization plan was not filed in good faith, 56 B.R. at 57–58. This conclusion was based on evidence unrelated to the serial filing issue, however.

**5.** Section 109(g) provides as follows:
Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g) (1991).

expected circumstances doom the debtor's chances for success, binding the parties to the original confirmation decision in the name of finality would frustrate this goal, and the confirmation decision should be reevaluated. Where a debtor can anticipate the changed circumstances before confirmation of the first plan and later files a second petition to relieve itself of its obligations under the prior plan, however, bad faith may be inferred.

■ In this case the changed circumstances were not unanticipated. First, Mr. Burke's drug use was not known to the Court when it confirmed Debtor's first plan, but Mr. Somekh admitted to his knowledge of Mr. Burke's condition prior to the confirmation. The resulting poor management and deterioration of the Property were therefore entirely foreseeable. Second, the evidence does not indicate that the repairs to the roof and air conditioner were the result of some hidden defect; instead, these are also foreseeable expenses that were calculable at the time of the first confirmation. Third, the maturity of Debtor's obligation under the plan in December of 1990 was obviously anticipated by all parties prior to confirmation and indeed prior to Debtor's first filing. Finally, changed market conditions alone are not sufficiently changed circumstances to warrant a second filing, *Casa Loma,* 122 B.R. at 818. The Court concludes that Debtor did not make a sufficient showing of unanticipated changed circumstances to justify the filing of a new petition, and that the new filing was in bad faith.

Integon's refusal to renegotiate the terms of the confirmed plan does not affect the Court's conclusion, since Integon had no obligation to renegotiate. The attractive terms of Debtor's new plan and its alleged intention to fully reorganize under these new terms are also irrelevant, since the Court is examining the propriety of the new filing itself, *see Northampton,* 37 B.R. at 113. Debtor had already proposed a feasible plan under which it could reorganize, and its partners chose not to meet their obligations under that plan.

Accordingly, the Court finds cause for relief from the automatic stay under § 362(d), and Integon's Motion is GRANTED.

IT IS SO ORDERED.