United States Court of Appeals,

Fifth Circuit.

No. 91–3572.

In the Matter of ELMWOOD DEVELOPMENT COMPANY, a Louisiana Partnership in Commendam, Debtor.

ELMWOOD DEVELOPMENT COMPANY, a Louisiana Partnership in Commendam, Appellant,

v.

GENERAL ELECTRIC PENSION TRUST, Appellee.

July 2, 1992.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, REYNALDO G. GARZA and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Elmwood Development Company appeals the dismissal of its second Chapter 11 bankruptcy petition. Agreeing with the bankruptcy and district courts that the second petition was not filed in good faith, we affirm.

Background

In July of 1985, General Electric Pension Trust ("GEPT") initiated Louisiana foreclosure proceedings against Elmwood's main asset, a ten-story office building called Elmwood Towers. GEPT agreed to defer the foreclosure pro ceeding until November of 1986 to afford Elmwood an opportunity to find a buyer o r refinancing lender. Elmwood was unsuccessful in its refinancing efforts. It resisted the foreclosure in state court and in April of 1987, on the very eve of foreclosure, filed a voluntary petition for relief under Chapter 11 (*Elmwood I*). After trial on GEPT's stay relief motion, Elmwood and GEPT executed a settlement agreement under which Elmwood was given a deadline of December 31, 1990 by which to satisfy GEPT's 18.7 million dollar secured claim. The agreement described the GEPT remedies in the event of Elmwood's default as "bankruptcy proof": GEPT was to have immediate authority to proceed with foreclosure. Further, Elmwood agreed not to propose *any* plan which would alter GEPT's rights under the settlement. The bankruptcy court

approved the settlement which expressly was incorporated into the Elmwood I confirmed plan approved on January 9, 1990.

On December 5, 1990, Elmwood filed a series of pleadings conceding material default of its confirmed plan and seeking its modification. On December 20, the bankruptcy court refused to modify the *Elmwood I* plan on the grounds that it was "substantially consummated" and thus not subject to modification.[1] *Elmwood I* presently pends. On December 28, 1990 Elmwood filed its second petition for Chapter 11 relief, *Elmwood II*. *Elmwood II* is the subject of the instant litigation.

The bankruptcy court dismissed *Elmwood II* based on a finding that it was not filed in good faith as required by 11 U.S.C. § 1112(b). The court found that *Elmwood II* was not motivated by a desire to effectuate a reorganization plan but was instituted to prevent GEPT from foreclosing on Elmwood Towers. The *Elmwood II* schedules contain no new assets and list the same 20 unsecured creditors as found in the first petition, albeit four are noted for a lesser sum. The bankruptcy court understandably found no changes which would authorize the successive *Elmwood II* filing. The court also found no realistic prospect for successful reorganization. The district court affirmed the bankruptcy court's dismissal and Elmwood timely appealed.

Analysis

We review a bankruptcy court's decision to dismiss a Chapter 11 petition for abuse of discretion.[2] A factual finding that a Chapter 11 petition was not filed in good faith is subject to the clearly erroneous standard of review.[3] If this finding is based on an incorrect statement of law,

---

[1]11 U.S.C. § 1127(b). On December 31, 1990, GEPT filed a notice of appeal from the portion of the district court order which concluded that the confirmed plan was substantially consummated. The district court has not yet ruled thereon.

[2]*In re Humble Place Joint Venture,* 936 F.2d 814 (5th Cir.1991).

[3]*In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986).

however, we review *de novo.*[4]

Lack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal under 11 U.S.C. § 1112(b).[5] The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws. The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.[6]

This case raises for this circuit the *de novo* issue of the extent to which a serial filing of a Chapter 11 petition evidences a lack of good faith on the part of the debtor. We conclude that the mere fact that a debtor has previously petitioned for bankruptcy relief does not render a subsequent Chapter 11 petition "*per se*" invalid. This conclusion is consistent with the Supreme Court's recent teaching in *Johnson v. Home State Bank.*[7] The *Johnson* Court held that serial Chapter 7 and Chapter 13 petitions are not categorically prohibited. The Court reasoned that because Congress has enumerated certain instances in which serial filings are *per se* impermissible, there is no absolute prohibition in instances not so enumerated. The Court considered the good faith requirement to be

---

[4]*In re Chaffin,* 816 F.2d 1070 (5th Cir.1987), *modified,* 836 F.2d 215 (5th Cir.1988) (even though a "totality of the circumstances" test was voiced by the bankruptcy court, a "*per se*" rule was applied in actuality, and thus *de novo* review was required).

[5]*Humble Place Joint Venture; Little Creek.* Section 1112(b) provides in part:

> ... the court may convert a case under this chapter [chapter 11] to a case under chapter 7 of this title or may dismiss a case under this chapter whichever is in the best interest of creditors and the estate, for cause....

[6]*Little Creek,* 779 F.2d at 1072 & 1074.

[7]―― U.S. ――, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

adequate protection from abusive serial filings.

Even prior to *Johnson,* the national consensus permitted serial filings in Chapter 11 cases provided the second petition was filed in good faith.[8] Where a debtor requests Chapter 11 relief for a second time, the good faith inquiry must focus on whether the second petition was filed to contradict the initial bankruptcy proceedings.[9] Because the *Elmwood I* bankruptcy court had found that the confirmed plan in that case was substantially consummated, we must consider whether the *Elmwood II* petition was an attempt to evade the Code's prohibition against modification of substantially consummated confirmed plans.[10] We are impelled to the conclusion that *Elmwood II* would only accomplish this impermissible purpose. In 1987 Elmwood bargained for three years in which to sell or refinance its property, granting an absolute deadline after which GEPT could proceed undisturbed with a foreclosure of Elmwood Towers. After reaping the benefit of its bargain

---

[8]*See In re Jartran, Inc.,* 886 F.2d 859 (7th Cir.1989); *In re McCormick Road Assoc.,* 127 B.R. 410 (N.D.Ill.1991); *In re Casa Loma Assoc.,* 122 B.R. 814 (Bankr.N.D.Ga.1991); *In re Miller,* 122 B.R. 360 (Bankr.N.D.Iowa 1990); *see also In re Mableton–Booper Assoc.,* 127 B.R. 941 (Bankr.N.D.Ga.1991), and *In re Henke,* 127 B.R. 255 (Bankr.D.Mont.1991) (post-*Johnson* cases reaching the same conclusion; *Henke* addressing a Chapter 12 filing successive to a Chapter 11 filing).

[9]*See Jartran,* 886 F.2d at 868 (discussing whether the successive filing "effectively evaded all responsibility under the previous reorganization plan"); *McCormick,* 127 B.R. at 413 (purpose of bad faith filing test is to discern whether the case was filed to abuse the judicial process by, in particular, delaying or frustrating the creditors' efforts to enforce their rights); *Miller,* 122 Bankr. at 367 ("[F]iling of a successive Chapter 11 ... after substantial consummation of a previously confirmed Chapter 11 case for the sole purpose of renegotiating previously agreed upon plan treatment is an impermissible motive for filing the successive case.").

[10]*See* 11 U.S.C. § 1127(b); *Miller; Casa Loma; In re AT of Maine, Inc.,* 56 B.R. 55 (Bankr.D.Me.1985) (refusing to permit a serial Chapter 11 filing that would effect a modification of a substantially consummated confirmed plan in a prior proceeding); *In re Northampton Corp.,* 39 B.R. 955 (Bankr.E.D.Pa.1984), *aff'd,* 59 B.R. 963 (E.D.Pa.1984) (filing of a second Chapter 11 petition to cure defaults arising under a previously confirmed Chapter plan is too akin to modifying the previous plan to be permissible).

> The district court has not yet ruled on GEPT's appeal of the bankruptcy court's finding in *Elmwood I* that the plan was substantially consummated. Our holding does not turn on the assumption that this ruling will be affirmed. It is undisputed that the plan was confirmed. Section 1127(b) also restricts, although it does not clearly prohibit, modification of confirmed plans. In either event, then, a serial filing to effect a modification of a confirmed plan may constitute an improper attempt to avoid section 1127(b)'s restrictions on modification.

Elmwood sought to avoid its solemn obligation by filing *Elmwood II.*

Elmwood maintains that changed circumstances justify the filing of the second petition. We agree that unanticipated changed circumstances may justify a valid successive request for Chapter 11 relief.[11] In that instance, a second petition would not necessarily contradict the original proceedings because a legitimately varied and previously unknown factual scenario might require a different plan to accomplish the goals of bankruptcy relief. Such a changed factual scenario does not exist, however, in the case at bar.

To demonstrate change, Elmwood contends that certain new factors would allow it ultimately to increase equity in Elmwood Towers to the eventual benefit of unsecured creditors: (1) two tenants might be moving into the vacant top floor; and (2) a new settlement agreement with another creditor, Irving Trust, provides that it will take only a 20% share of unsecured-creditor funds as opposed to the estimated 25–27% which it would otherwise receive. Elmwood also lists as changed factors: (3) a claim to a prospective buyer but needs additional time to consummate the sale; (4) that there is pending litigation to resolve lien priority between GEPT and Irving Trust; and (5) the national credit crunch ostensibly occurring after the *Elmwood I* plan was confirmed.

We agree with the bankruptcy court that none of these factors constitute changed circumstances sufficient to justify the serial filing in this case. The evidence presented in the June 26, 1987 proceeding in *Elmwood I* reveals that occupancy of the tenth floor was fully anticipated at that time. Similarly, Elmwood also contended in the *Elmwood I* trial that Irving Trust was willing to negotiate its claims. The *Elmwood II* proceedings reveal that Irving Trust and Elmwood still have not finalized an agreement on the Irving Trust lien. Regarding Elmwood's promises of a pending sale,

---

[11]*Mableton–Booper,* 127 B.R. at 944 (requiring a showing of "unanticipated changed circumstances" to justify the filing of a successive petition); *Casa Loma,* 122 B.R. at 818 (requiring that "the second case is filed in good faith and as a result of unforeseen changed circumstances.").

Elmwood has consistently represented that it could sell or refinance Elmwood Towers. The indisputable fact remains that in the *Elmwood I* settlement Elmwood voluntarily bargained for an absolute deadline within which to consummate that sale. That settlement also provides that GEPT's litigation with Irving, which was ongoing at that time, would have no effect on GEPT's rights under the settlement. Regarding the national credit crunch, Elmwood's manager testified in *Elmwood I* that the real estate market had been flat for several years. The depressed real estate economy was fully anticipated by Elmwood at the time of the settlement in *Elmwood I*. Nothing has changed.

The *Elmwood I* record demonstrates that the circumstances alleged were not only foreseeable but in fact were expected by Elmwood before it entered into the 1987 settlement. We therefore reject Elmwood's next contention that the bankruptcy court's proceedings were inadequate for lack of a fact-finding hearing. A court may decline to conduct an evidentiary hearing where the alleged facts, even if true, would not change the outcome.[12] The court entertained Elmwood's arguments, its counsel outlined the changed circumstances purportedly justifying the serial petition and explained how those circumstances would be proved in an evidentiary hearing. The court was not required to conduct a hearing because even if proved, those "changes" would not qualify as unanticipated—they were, in fact, presented to the court in *Elmwood I*.[13] Because the good faith standard is an objective one, the court was not constrained to entertain and give dispositive weight to testimony of the subjective state of mind of Elmwood's manager.[14]

---

[12]*See Mableton–Booper* (bad faith may be inferred from record in bankruptcy case); *see also Stage I Land Co. v. United States,* 71 B.R. 225 (D.Minn.1986) (remand to bankruptcy court is not necessary when the issue of good faith filing can be determined through a review of the record on appeal); *In re Zick,* 931 F.2d 1124 (6th Cir.1991) (dismissal of Chapter 7 case affirmed; full blown evidentiary hearing is not required where record supports dismissal).

[13]We reject Elmwood's contention that the *Elmwood I* proceedings are improperly part of the *Elmwood II* record. In the hearing the court agreed to accept the *Elmwood I* record in *Elmwood II*. This ruling was not in error. *Cf. In re Missionary Baptist Foundation, Inc.,* 712 F.2d 206 (5th Cir.1983) (bankruptcy court may take judicial notice of the record in prior related proceedings).

[14]*McCormick,* 127 B.R. at 415 ("[O]nce a court has properly found that the debtor has failed to satisfy the court's objective good faith inquiry ... it may properly dismiss the debtor's petition without considering the debtor's subjective good faith.").

Finally, we find no merit in Elmwood's contention that the bankruptcy court confused or misapplied the law. Elmwood maintains that despite the court's statements to the contrary, it in fact considered the serial filing to be *per se* illegal. We do not agree. Not only did the court state that "there is no "*per se* ' rule against serial filings of Chapter 11's," but it also explained that *Elmwood II* "was not filed in good faith" because Elmwood had neither the purpose nor the ability to effectuate a reorganization plan. Elmwood also insists that the court failed to consider all of the relevant circumstances. In explaining why none of the alleged circumstances justified Elmwood's attempt to renege on the *Elmwood I* settlement, the court stated, "Only the "national real estate and credit crunch' can be perceived as factors negatively impacting the Debtor's ability to perform." Elmwood maintains that this statement reveals a refusal by the court to consider the positive changed circumstances. From our perspective, the real quarrel is that the court did not attribute to these circumstances the significance Elmwood desired. It is apparent from the record that all of the circumstances presented by Elmwood were adequately considered and analyzed.

## Conclusion

We find that the good faith rule, engineered to prevent abusive manipulation of the Bankruptcy Code, has been properly honored by the bankruptcy court's dismissal. Elmwood has not justified the maintenance of a serial Chapter 11 petition which directly obstructs the bankruptcy proceedings in its prior Chapter 11 case. The second petition properly was dismissed.

AFFIRMED.