In re James WOODSON, Debtor.

Bankruptcy No. 96–8074–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 5, 1997.

Bernard J. Morse, Tampa, FL, for Debtor.

L. Joseph Shaheen, Jr., Tampa, FL, for Barnett Bank.

## ORDER ON BARNETT BANK N.A.'S MOTION TO DISMISS DEBTOR'S CHAPTER 11 PETITION (DOC. # 79)

ALEXANDER L. PASKAY, Chief Judge.

This is a yet to be confirmed Chapter 11 case and the matter under consideration is the Motion to Dismiss the Chapter 11 case of James Woodson (Debtor) filed by Barnett Bank, N.A., formerly Barnett Bank of Jacksonville, successor by merger to Barnett Bank of Manatee County, N.A. (Bank). The Bank contends, in essence, that this is a Chapter 22 case, the Debtor's second attempt to achieve rehabilitation under Chapter 11 and so far without success and that the second Chapter 11 case has the traditional hallmark of a bad faith filing. Therefore, according to the Bank the case is ripe for dismissal "for cause" pursuant to 11 U.S.C. § 1112(b). In support of this proposition, the Bank points out the following facts which appear from the record of this and the previous Chapter 11 case.

The Debtor is a farmer and is the owner of a large tract of farmland located in South Georgia. The Debtor's farmland is encumbered by three mortgages. The first mortgage, currently with an approximate principal balance of $300,000, is held by Southwest Georgia Farm Credit. The second mortgage is held by Lykes Agri Sales, Inc. (Lykes). The third mortgage, held by a fertilizer supplier, has a current balance of less than $6,000.00. It is unclear whether this mortgage is in fact superior to the mortgage held by Lykes.

The Debtor farmed the land in the past, albeit not very successfully. For instance, between 1993 and 1996 the Debtor had six crops of tomatoes, five of which were completely lost due to a hail storm and freeze. None of these losses were covered by insurance.

According to Debtor's counsel, the Georgia farmland, with the exception of seventy acres, is leased to a subsidiary of Monsanto Chemical Corp. (Monsanto). The lease of the farmland to Monsanto produces in excess of $57,000.00 per annum, an amount which is more than sufficient to service the mortgages. Furthermore, according to Debtor's counsel, the excess income derived from the lease could be used as partial funding of the Debtor's plan of reorganization. It is conceded by Debtor's counsel that this surplus is substantially less than what is needed to fund

any plan which the Debtor might propose. In addition to the farmland in Georgia, the Debtor also owns his homestead, a twenty-six acre tract of land on which the Bank holds its first mortgage.

The Debtor filed his first Chapter 11 case in February 1993 and in due course filed his Plan of Reorganization. Although the Debtor's Plan was challenged, it was ultimately confirmed on September 1, 1994. Under the provisions of the confirmed Plan, the Debtor was required to execute a new promissory note and mortgage in favor of the Bank and to make payments pursuant to the terms of the new note. The Debtor did execute and deliver the promissory note to the Bank in conformity with the confirmed Plan. It is without dispute that the Debtor also paid substantial adequate protection to the Bank and also made some payments to the other creditors. By January 1996, however, the Debtor defaulted on its obligation to the Bank, which then commenced a foreclosure action in order to foreclose the Debtor's interest in the land covered by the Bank's mortgage. On January 30, 1995, the Debtor filed a motion, seeking to modify the confirmed Plan pursuant to 11 U.S.C. § 1127. Rather than proceed' with the Chapter 11 case, however, the Debtor agreed to the dismissal of his first Chapter 11 case. The Debtor's first Chapter 11 case was dismissed on April 13, 1995.

In order to forestall the loss of his homestead by the foreclosure sale, on June 20, 1996, the Debtor filed his second Chapter 11 case. In due course, the Debtor filed his Disclosure Statement and Plan of Reorganization but has not been able to obtain confirmation. On July 30, 1997, this Court denied confirmation with leave to file an amended Plan of Reorganization on or before August 29, 1997. At the time of the hearing on the instant matter, the Debtor had not filed an amended Plan of Reorganization.

The Bank contends that the second Petition for relief under Chapter 11 was nothing more than an impermissible attempt to modify a substantially consummated Chapter 11 plan. The Bank contends that under these circumstances, the second Chapter 11 case is a bad faith filing which must be dismissed "for cause" under 11 U.S.C. § 1112(b), citing *In re Northampton Corporation,* 39 B.R. 955 (Bankr.E.D.Pa.1984), aff'd. 59 B.R. 963 (E.D.Pa.1984) ("Cause" under § 1112(b) present where debtor used second chapter 11 case to affect claims which were unsuccessfully addressed in confirmed plan in prior Chapter 11 case).

■ As a general rule, a debtor should not be permitted to proceed with a successive Chapter 11 case where the debtor has defaulted on a confirmed, substantially consummated plan of reorganization, because the successive case is viewed as an impermissible attempt to modify a substantially consummated plan. *Matter of Savannah, Ltd.,* 162 B.R. 912, 915 (Bankr.S.D.Ga.1993). Courts have recognized an exception to this rule, however, where the second case is filed because of a change in circumstances, which the debtor demonstrates was unanticipated at the time of confirmation of the first plan or reorganization. *Id.* at 915 (citation omitted). Thus, a resolution of this matter requires this Court to determine: first, whether the first Chapter 11 case was substantially consummated, thus the second Chapter 11 case is an impermissible attempt to modify a confirmed Plan; and second, whether unanticipated events caused the default of the confirmed Plan which would justify allowing the Debtor to seek relief under Chapter 11 for the second time, even though the second Chapter 11 case basically deals with the same debts as those involved in the first Chapter 11 case, including the debt owed to the Bank.

The term "substantial consummation" is defined by 11 U.S.C. § 1101(2) as follows:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

Although the definition is facially read in the conjunctive, it is evident that this reading would be incorrect and clearly, would not work under those circumstances where a con-

firmed Chapter 11 Plan of Reorganization did not call for the transfer of any properties of the debtor and where the Plan contemplated that the reorganized debtor will continue to manage all the properties which came into the estate and which were dealt with by the confirmed Plan.

The definition set forth in subclause (B) clearly applies in the present instance. Upon confirmation of the Plan of Reorganization in the Debtor's first Chapter 11 case, property of the estate was fully revested in the Debtor. However, it is debatable whether the Debtor by executing and delivering a new promissory note and mortgage to the Bank and making some payments substantially consummated the Plan within the meaning of subclause (C) of § 1101(2) of the Bankruptcy Code. Where a plan of reorganization calls for the issuance of a new note and mortgage to a secured creditor, the plan is obviously substantially consummated at least vis-a-vis that particular creditor. However, it is unclear what distributions were made to other creditors pursuant to the confirmed plan. In the absence of proof of the commencement of some general distribution to all creditors affected by the confirmed plan, one would be hard-pressed to put forth a persuasive argument that the entire confirmed plan was substantially consummated.

This Court is disinclined to accept the proposition that the confirmed Plan was substantially consummated, and that therefore the second Chapter 11 is an impermissible attempt to modify a substantially consummated plan of reorganization.

This leads to the next issue which is whether the second Chapter 11 case filed by this Debtor is justified. Debtor's counsel contends that the default of the first plan and the abortion of the first Chapter 11 case were due to unanticipated events which precipitated the second filing. Debtor's counsel points out that prior to the commencement of this Chapter 11 case, an unsecured creditor sued the Debtor in Florida and obtained a very substantial judgment. The creditor was about to domesticate the judgment in Georgia in order to levy on the farmland. The only way the Debtor was able to prevent this from occurring was to file the second Chapter 11 case. In addition, subsequent to confirmation of the Plan in the first case, the Debtor's crop of tomatoes was completely destroyed in a hale storm. This Court is satisfied that substantial changes in circumstances occurred which were unanticipated at the time of confirmation in the first case.

In addition, none of the factors which would evidence a bad faith filing are present in this case. *See In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988). Attacks alleging a debtor's lack of good faith in filing a Chapter 11 case is raised as a general rule at the very embryonic stage of the case. The present Motion was filed more than one year after the commencement of the case, after the Debtor filed his Disclosure Statement and Plan of Reorganization, and after proceeding to confirmation. The Debtor is about to amend his Plan of Reorganization, expecting to succeed in obtaining confirmation at this time. While there may be some doubt as to whether the amended Plan will be confirmed, this Court is satisfied that the Debtor should be accorded this last opportunity to obtain relief under Chapter 11. Based on the foregoing, this Court is satisfied that it would be improvident to grant the Bank's Motion at this time.

Accordingly it is

ORDERED, ADJUDGED AND DECREED that Barnett Bank N.A.'s Motion to Dismiss Debtor's Chapter 11 Petition be, and the same is hereby denied.