**In re David Stewart ADAMS d/b/a Adams Ranch, Debtor.**

**Bankruptcy No. 97–40732–12.**

United States Bankruptcy Court, D. Kansas.

March 31, 1998.

**598**

William E. Metcalf, Topeka, KS, for Debtor.

Terry C. Cupps, Wichita, KS, for Creditor, Prudential Insurance Co.

Eric C. Rajala, Overland Park, KS, for Chapter 12 Trustee.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

The debtor, David Adams, filed a Chapter 11 bankruptcy petition In 1985; and, in 1988 his Chapter 11 plan was confirmed. It is undisputed that the plan confirmed in 1988 was substantially consummated. In 1997 the debtor filed a Chapter 12 bankruptcy petition, and has since then filed a motion to convert the 1997 case to a Chapter 11. Prudential Insurance Company of America filed a motion for relief from stay, or in the alternative, for adequate protection or dismissal. Prudential contends that it is entitled to relief from stay to enforce the terms of the confirmed Chapter 11 plan, and that the 1997 bankruptcy case should be dismissed because the debtor is not eligible for relief as a family farmer. Prudential also objects to the debtor's motion to convert to Chapter 11 as an improper attempt to modify a confirmed and substantially consummated Chapter 11 plan, and further alleges that the 1997 case was filed in bad faith. The debtor argues that a range fire that burned 3,000 acres and part of his cattle herd in 1996 is a material change in circumstances that justifies his filing a new bankruptcy case. The debtor further argues that Prudential's claim is oversecured and that its interest in property is adequately protected.

### FINDINGS OF FACT

This matter came on for hearing. Based on the testimony of witnesses and the parties' stipulation of facts and stipulated exhibits, the Court makes the following findings of fact.

In 1985 David Stewart Adams d/b/a Adams Ranch filed a Chapter 11 bankruptcy petition, in Case No. 85–41036–11. His plan of reorganization was confirmed in an Order Approving Disclosure Statement and Confirming Plan, entered on May 13, 1988. This order incorporated by reference a Stipulation and Order between Adams and Prudential concerning treatment of Prudential's claim in

the plan. Prudential had a claim in the amount of $1,230,552.28, fully secured by real estate mortgages and conditional assignments of oil, gas, mineral rights and other income covering certain property owned by Adams in Meade County, Kansas and Beaver County, Oklahoma. Adams owns an 8,000 acre ranch that spans these two counties. About 4,000 to 5,000 acres are in Meade County, Kansas.

Under the terms of the confirmed Chapter 11 plan, Adams would pay Prudential in full over a period of 15 years with interest accruing at the rate of 10.5% per annum, in installment payments of $13,602.51 per month for 180 months, commencing April 1, 1988. If Adams failed to make a monthly payment by the due date on the first of each month, the payment was deemed in default, but Adams had a 60 day period after notice of default in which to cure. In the event he failed to cure the default within the 60 days, Prudential had the right to file deeds and assignments and dispossess Adams of these properties.

Adams was repeatedly in default from the first monthly payment due Prudential after confirmation. Adams also had difficulty keeping current on real and personal property taxes. In 1991, the Court entered an Order Regarding Debtor's Motion for Clarification which found that Adams' failure to pay real and personal property taxes on the property securing his debt to Prudential constituted a default under the terms of the plan. But, the Court also granted the debtor an extension of thirty days in which to reach a written agreement with the taxing authorities to cure the arrearage. Bruce Woner, who was Adams' bankruptcy counsel in the prior Chapter 11 case, testified that Adams had an ongoing dispute with Meade County concerning its allocation of tax liability among Adams and other members of his family who jointly owned land and mineral rights.

Adams had planned to fund his plan payment to Prudential from his royalties. In fact, the escrow agent was directed to make the royalty payments directly to Prudential. In 1986, for example, his royalty income exceeded $300,000; but, after his plan was confirmed, oil prices dropped and his royalty income dropped dramatically. His royalty income was almost always insufficient to make his monthly payments to Prudential, so Adams had to rely on his farm income. He would also periodically liquidate property to raise funds.

Adams' tax returns reveal that in 1993 his gross farm income of $151,656 exceeded his royalty income of $109,000. And, in 1994, his gross farm income of $163,862 exceeded his royalty income of $93,077. His tax return for 1995 was not admitted into evidence, but Adams testified that in 1995, his farm income was $131,102 and his royalty income was $94,452.

The parties agree that Adams' 1988 Chapter 11 plan was substantially consummated. From April 1988 to February 1996, Adams managed to make monthly payments to Prudential. Almost all payments were late; some were cured within the 60–day grace period; some were cured after the grace period. But in February 1996, a downed power line not far from Adams' ranch triggered a fire that consumed a vast number of acres in a three county area. The fire burned 3,000 of Adams' 8,000 acres of ranch and farmland. The fire destroyed a tractor and three hay trailers; it burned hay and other cattle feed; and it killed 14 cow/calf pairs and 6 additional calves. Adams lost income from pasture leases and had to expend money to repair 8 miles of fence, as well as to re-seed and mulch much of the burned ground. Adams claims that the damage to his land, trees, cattle, equipment, hay, feed and other personal property, exceeded $689,000. Because of the fire, Adams' farm income decreased in 1996. His 1996 income tax return reveals royalty income of $97,037 and gross farm income of $91,050.

On April 17, 1997, Adams filed a Chapter 12 petition in bankruptcy, Case No. 97–40732–12. On June 20, 1997, Prudential filed a Proof of Claim, as secured, in the amount of $837,177.46. On July 19, 1997, Adams filed a Chapter 12 plan in which he proposed to pay Prudential's claim in full, amortized over 30 years at 10.5% interest per annum in monthly installments, by an assignment of all mineral royalty payments received. In paragraph h. of the Stipulation and Order in the

1988 Chapter 11 case, Adams had agreed that he would seek no modification of the treatment of Prudential's claim and Adams had waived his right to seek any such modification without Prudential's prior, express, written consent.

The parties agree that Prudential's claim is oversecured. Prudential's witness, Kenneth McNeil, its director of agricultural investments, testified that the land securing its claim is worth about $1.2 million, and the amount of the claim, with accrued interest was about $900,000. Adams testified that the land is worth at least twice the amount of Prudential's claim, and in his written response to the motion for relief from stay, alleges that the land is valued at $2.8 million. Prudential has received about $22,928.43 in royalty payments since Adams filed the 1997 bankruptcy, because the escrow account arrangement is still in effect by agreement of the parties. McNeil testified that the arrearage due Prudential is approximately $190,-000, including principal, interest at the rate of 10.5%, and attorney fees and expenses. McNeil further testified that there is no evidence that their collateral, the land, is depreciating in value. In December 1996, the taxing authority in Meade County, Kansas, filed a foreclosure action against Adams' real property in Meade County that secured Prudential's claim. Adams testified that he owes slightly less than $60,000 in property taxes for 1994 to 1996, and that he will be able to cure this arrearage out of the proceeds from a lawsuit he filed against the electric company. The lawsuit was settled and after payment of fees, Adams received $154,000.

## CONCLUSIONS OF LAW

Prudential moved to dismiss Adams' Chapter 12 case on the basis that his 1996 farm income was less than his royalty income. Adams concedes that he does not meet the eligibility requirements for Chapter 12.

Thus, Adams has filed a motion to convert this Chapter 12 case to a Chapter 11, which renders moot Prudential's motion to dismiss for lack of eligibility.

■ Prudential objects to the motion to convert to a Chapter 11 on the basis that the debtor is improperly attempting to modify his substantially consummated Chapter 11 plan. Under § 1127 of the Bankruptcy Code [1], a reorganized debtor may modify a Chapter 11 plan after confirmation but before substantial consummation of such plan, if the contents of the plan comply with the provisions of § 1123 and if the classification of claims or interests complies with § 1122. But, when a confirmed plan has been substantially consummated, the debtor may no longer modify its provisions under § 1127.

■ Given this limitation on postconfirmation modification, the question becomes whether a debtor can in effect modify such a confirmed plan by filing a new bankruptcy case? Courts agree that the general rule is that a reorganized debtor may not file a new plan to effect a modification of its substantially consummated plan.[2] The terms of a confirmed plan are binding on the parties and should be given res judicata effect. The terms of a confirmed plan usually represent the results of negotiations between the debtor and its creditors, and the parties should be able to rely on the finality of those terms. A plan is "substantially consummated" when: all or substantially all of the property to be transferred under the plan has in fact been transferred; the debtor or its successor under the plan has assumed the management of all or substantially all of the property dealt with by the plan; and distribution under the plan has commenced.[3] Once its plan is substantially consummated, the debtor should not be able to circumvent or evade its binding responsibilities by filing what is in effect a modified plan. Property has been trans-

---

1. 11 U.S.C. § 1127.

2. *See Elmwood Dev. Co. v. General Elec. Pension Trust (In re Elmwood Dev. Co.)*, 964 F.2d 508 (5th Cir.1992) (dismissing second Chapter 11 because its purpose was to modify a substantially consummated Chapter 11 plan), *reh'g denied* 974

F.2d 1337 (5th Cir.1992); *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 867 (7th Cir.1989); *In re Woodson*, 213 B.R. 404, 405 (Bankr.M.D.Fla.1997); *In re Northampton Corp.*, 39 B.R. 955, 956 (Bankr.E.D.Pa.1984), *aff'd* 59 B.R. 963 (E.D.Pa.1984).

3. 11 U.S.C. § 1101(2).

ferred, management of the property has been assumed, and distribution has commenced. The debtor and the creditors have now acted in reliance on the terms of the confirmed plan and in the interest of finality, the plan should no longer be subject to modification.[4]

■ Yet, there is no per se prohibition of successive bankruptcy filings.[5] In *Johnson v. Home State Bank*,[6] the Supreme Court noted the absence of a statutory prohibition of serial filings and ruled that a debtor could file a Chapter 13 bankruptcy after the debtor had filed a Chapter 7 case. And, in *In re Jartran*,[7] the court allowed the debtor to file a second Chapter 11 case, holding that "serial Chapter 11 filings are permissible under the Code if filed in good faith." While the Jartran court found no per se prohibition against serial filings, in that case, the debtor's second Chapter 11 was for purposes of liquidation. The court found that the debtor was not trying to circumvent the binding terms of a confirmed plan, but was attempting an orderly liquidation after having failed to successfully reorganize under the terms of its prior Chapter 11 plan.

■ Other courts, however, have allowed the debtor to file a second Chapter 11 reorganization case after failing in the first Chapter 11 reorganization plan, if the debtor is acting in good faith.[8] These courts have thus recognized exceptions to the general rule that a debtor may not modify a substantially consummated Chapter 11 plan. The recognized exceptions are premised on the debtor's good faith as demonstrated by the debtor's genuine need for a new Chapter 11. This genuine need is established by an extraordinary change of circumstances after substantial consummation. Because the debtor should generally be bound by the terms of the confirmed plan and live with the benefits and burdens of its bargain, only changes that were unanticipated and not reasonably foreseeable at the time of confirmation or substantial consummation can justify the filing of a new reorganization plan. If the debtor's income decreases or expenses increase because of ordinary and foreseeable changes in the debtor's operations, or in the market, that does not constitute a sufficient change in circumstances. The occurrence of ordinary, foreseeable risks of doing business should not relieve the debtor of the terms of its confirmed plan.

Thus, in *In the Matter of Savannah*, the court found that an increase in competition and the costs of replacing a sign were ordinary and foreseeable risks and costs of doing business that did not justify a new Chapter 11 plan.[9] But, in *In re Casa Loma Assocs.*, the court found a sufficient change in circumstances that justified a new Chapter 11.[10] There, after substantial consummation, the debtor discovered fire damage and structural defects in its apartment complex that necessitated substantial expenditures to repair.[11] In addition, there was an unanticipated change in federal law that required the debtor to accept children as tenants and which resulted in increased vacancies in what had previously been an all adult complex.[12]

---

**4.** *Northampton*, 39 B.R. at 956; *In re Northtown Realty Co., L.P.*, 215 B.R. 906 (Bankr.E.D.N.Y. 1998).

**5.** *Northtown*, 215 B.R. at 911.

**6.** 501 U.S. 78, 87, 111 S.Ct. 2150, 2155–56, 115 L.Ed.2d 66 (1991).

**7.** *Jartran*, 886 F.2d at 866 (holding that a liquidation case is not an attempt to modify a substantially consummated plan and is thus a filing in good faith).

**8.** See *CFC 78 Partnership B v. Casa Loma Assocs. (In re Casa Loma Assocs.)*, 122 B.R. 814, 818 (Bankr.N.D.Ga.1991); *Integon Life Ins. Corp. v. Mableton–Booper Associates (In Matter of Mableton–Booper Associates)*, 127 B.R. 941, 943 (Bankr.N.D.Ga.1991); *Security Pacific Credit Corp. v. Savannah, Ltd. (In Matter of Savannah, Ltd.)*, 162 B.R. 912, 915 (Bankr.S.D.Ga.1993); *In re Woodson*, 213 B.R. 404, 405 (Bankr.M.D.Fla. 1997). See also *In re Henke*, 127 B.R. 255 (Bankr.D.Mont.1991) recognizing that the debtor could file a Chapter 12 case after defaulting under a substantially consummated Chapter 11 plan, if the Chapter 12 case was filed in good faith, but holding that this debtor did not act in good faith.

**9.** *Savannah*, 162 B.R. at 916–17.

**10.** *Casa Loma*, 122 B.R. at 818–19.

**11.** *Id.* at 815–16.

**12.** *Id.*

These courts that recognize the exception for a change of circumstances, require a change that could not be reasonably anticipated at the time of the original reorganization. Thus, changes associated with the realities of economic change are an insufficient reason to allow a new bankruptcy case. When the reorganized debtor and its creditors bargained for and agreed to the terms of the confirmed plan, the debtor is charged with crafting a plan that could absorb economic changes, and failing that, the debtor understood its risk in proceeding to confirmation under terms and assumptions that could change.

■ On the other hand, where events and occurrences have transpired that are extraordinary and not reasonably foreseeable, the debtor should not be forever barred from attempts to reorganize. Thus, the first prong of the test is the nature of the changes. Could they have been reasonably foreseen, or were they extraordinary? In this case, the changed circumstance was a wide spread range fire, that burned 3,000 acres of Adams' 8,000 acres of ranch and cropland. This fire destroyed part of Adams' cow herd and crops, and he had to spend substantial monies in repair of fences, outbuildings, replacement of equipment and cattle feed, and damage to trees and other personal property. This change in circumstances was clearly extraordinary and not anticipated nor reasonably foreseeable.

■ Even extraordinary and unforeseeable changes will not support a new Chapter 11, if these changes do not substantially impair the debtor's performance under the confirmed plan. This is in keeping with the principle that debtors and creditors should be bound by the bargained for terms of a confirmed and substantially consummated plan. Thus, the exception for extraordinary circumstances requires that these circumstances cause the default or substantially impair the debtor's performance under the plan.

Here, Adams admittedly had problems with performance under the plan almost immediately after confirmation. He had anticipated funding the plan with oil royalties, but then oil prices dropped. This type of change in the oil market was foreseeable and should have been anticipated. This circumstance does not justify a new Chapter 12 or Chapter 11 case.

But, the evidence demonstrates that the fire was the primary and substantial reason for Adams' default. Despite the decreased royalty income, Adams labored under the terms of the confirmed plan from May, 1988 to January, 1996. For 7 years and 7 months, he made monthly payments to Prudential. Although his payments were often late, he continued to operate and continued to pay Prudential on a regular, even if tardy, basis. Although his past and current financial situation is impaired to some extent by the change in royalty income, it is clear that the fire was the death knell. The fire destroyed a tractor and 3 hay trailers; it burned hay and other cattle feed; and it killed 14 cow/calf pairs and 6 additional calves. The fire burned 3,000 of the debtor's 8,000 acres of ranch and farmland. Adams lost income from pasture leases and had to expend money to repair eight miles of fence, as well as to re-seed and mulch much of the burned ground. Adams' gross farm income in 1996 was $40,000 less than his gross farm income in 1995 and $70,000 less than in 1994. Moreover, he had substantial damages and extraordinary expenses because of the fire. The Court concludes that this was an extraordinary, unforeseeable change in circumstances that substantially and directly impeded Adams' continued performance under the confirmed plan. Thus, the Court concludes that Adams' new bankruptcy case was filed in good faith and does not represent an improper attempt to modify his prior plan in contravention of § 1127 of the Bankruptcy Code. The Court therefore denies Prudential's motion to dismiss this case and motion for relief from stay for cause under § 362(d)(1).

■ The Court also denies Prudential's motion for relief from stay under § 362(d)(2). The parties stipulate that there is equity in the land securing Prudential's claim. Prudential's witness testified that there is at least $300,000 in equity and that the land is not depreciating. Adams testified that there is substantially more equity in the land. It is

also not disputed that Adams' income comes from the land, from raising cattle and crops, and from royalty income from mineral rights on the land. Prudential did not present any evidence rebutting Adams' evidence that the property is necessary to a reorganization. The Court therefore denies Prudential's motion for relief from stay under § 362(d)(2). Prudential alternatively asked for adequate protection of its interest. But, Prudential admits that it has a substantial equity cushion and that the value of its collateral is not decreasing. It has not demonstrated a need for adequate protection and this request is denied as well.

IT IS THEREFORE ORDERED BY THE COURT that the Motion of the Prudential Insurance Company of America for Relief From Automatic Stay, or in the Alternative for Adequate Protection or Dismissal shall be DENIED.

IT IS FURTHER ORDERED BY THE COURT that the Debtor's Motion to Convert From Chapter 12 to a Case Under Chapter 11 shall be GRANTED, and the Objection of the Prudential Insurance Company of America to Debtor's Motion to Convert Chapter 12 to a Case Under Chapter 11 is OVERRULED.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

### JUDGMENT ON DECISION

This matter comes before the Court pursuant to Prudential Insurance Company of America's motion for relief from stay, or in the alternative, for adequate protection or dismissal. The Honorable Julie A. Robinson, presiding. The Court took the matter under advisement, and a decision having been rendered,

IT IS THEREFORE ORDERED BY THE COURT that the Motion of the Prudential Insurance Company of America for Relief From Automatic Stay, or in the Alternative for Adequate Protection or Dismissal shall be DENIED.

IT IS FURTHER ORDERED BY THE COURT that the Debtor's Motion to Convert From Chapter 12 to a Case Under Chapter 11 shall be GRANTED, and the Objection of the Prudential Insurance Company of America to Debtor's Motion to Convert Chapter 12 to a Case Under Chapter 11 is OVERRULED.

IT IS SO ORDERED.