**In the Matter of Thomas Laverne WEBER and Nancy Jean Weber, Debtors.**

**Bankruptcy No. BK87–1658.**

United States Bankruptcy Court,
D. Nebraska.

Sept. 28, 1988.

Howard T. Duncan, Omaha, Neb., for debtors.

Susan L. Knight, U.S. Attorney's Office, Lincoln, Neb., for FmHA.

## MEMORANDUM OPINION

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

THIS MATTER came before the court for a hearing on an objection to the Chapter 13 plan of the debtors (Fil. # 12) filed by the United States Attorney on behalf of the Farmers Home Administration ("FmHA"). Three issues are presented for determination:

1. Is the good faith standard of 11 U.S.C. § 1325(a)(3) violated when the debtor uses Chapter 13 to impair a debt reaffirmed in a prior Chapter 7 proceeding?

2. May a Chapter 13 plan bifurcate the treatment of a mortgage claim by proposing to cure existing defaults with payments under the plan while making payments of principal and interest outside the plan?

3. Does the failure to file a reaffirmation agreement with the court in the previous Chapter 7 case render the agreement unenforceable?

The court concludes that the case was filed in good faith, but that the plan cannot be confirmed because it impermissibly bifurcates the treatment of FmHA's mortgage claim by proposing to cure existing defaults with payments under the plan while making payments of principal and interest outside the plan.

## FINDINGS OF FACT

The material facts have been established by stipulation of the parties and the document filed therewith, the record of the Clerk of the Bankruptcy Court in this Chapter 13 case, and the record of the debtors' prior Chapter 7 bankruptcy case. The debtors filed a Chapter 7 bankruptcy proceeding in the District of Nebraska on December 23, 1981, and received a discharge on September 12, 1984. Prior to the entry of discharge, the debtors entered into a reaffirmation agreement with the FmHA pursuant to which the debtors reaffirmed their obligations to pay $37,500.00

to the FmHA. The debtors were not in default on their mortgage payments to FmHA when they filed their Chapter 7 case or when they entered into the reaffirmation agreement, nor did the FmHA reduce its debt to a lesser amount upon the debtors' reaffirmation. After an interim of six years, the debtors filed this Chapter 13 case on May 21, 1987.

The debtors' bankruptcy schedules list two creditors: the FmHA and a $200.00 car loan from a secured creditor. The plan bifurcates the treatment of FmHA's mortgage claim by proposing to cure defaults with payments under the plan and making payments of principal and interest outside the plan. Specifically, the debtors' plan provides:

> Regular monthly mortgage payments payable to Farmers Home Administration for a debt secured by the Debtors' home residence shall be paid directly to Farmers Home Administration outside of the Plan. Past due home mortgage payments along with interest ... shall be paid to Farmers Home Administration within the Plan.

> The holder of any allowed secured claim provided for within the Plan shall retain the lien securing its collateral until the creditor receives an amount equal to the proof of claim duly provided and allowed herein or the value of the collateral, whichever is less.

## DISCUSSION

For the reasons set forth herein, the court finds that the plan cannot be confirmed. Although the plan was filed in good faith in accordance with 11 U.S.C.

§ 1325(a)(3), it impermissibly bifurcates arrearages and principal mortgage payments inside and outside the plan in violation of § 1322(b)(5).

### Good Faith

Section 1325(a)(3) provides that the court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." Section 1322(b)(2) provides that a claim secured only by a mortgage on the debtors' principal residence must remain "unaffected" by the Chapter 13 plan except for curing an existing default on a deferred basis under § 1322(b)(5). Some cases have held that the good faith standard is violated when the debtors file a Chapter 13 bankruptcy that impairs a reaffirmation agreement on mortgage loans entered into during a previous Chapter 7 case. *See In re Gainey*, 17 B.R. 397 (Bkrtcy.E.D.Va.1982) and *In re Moore*, 50 B.R. 301 (Bkrtcy.S.D.Ohio 1985).

■ A court should not find that the good faith standard is violated solely because the Chapter 13 plan results in a violation of a reaffirmation agreement entered into during a previous Chapter 7 case. Good faith must be determined after considering all the facts and circumstances of the case, including the factors enumerated by the Eighth Circuit Court of Appeals in *In re Estus*, 695 F.2d 311 (8th Cir.1982) and *Education Assistance Corporation v. Zellner*, 827 F.2d 1222 (8th Cir.1987).[1]

■ In the context of a so-called "chapter 20" where a Chapter 13 petition follows discharge in a Chapter 7 case, particular attention should be focused upon the fol-

---

1. The *Estus* court enumerated the following factors:

1. The amount of the proposed payments and the amount of the debtors' surplus;
2. The debtors' employment history, ability to earn and likelihood of future increases in income;
3. The probable or expected duration of the plan;
4. The accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
5. The extent of preferential treatment between classes of creditors;
6. The extent to which secured claims are modified;
7. The type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
8. The existence of special circumstances such as inordinate medical expenses;
9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and
11. The burden which the plan's administration would place upon the trustee.

695 F.2d at 317.

lowing factors in determining whether the good faith standard is violated by a Chapter 13 plan that impairs a reaffirmation agreement:

1. Did debtor enter into the reaffirmation agreement with the intention of filing a subsequent Chapter 13?

2. Under the terms of the reaffirmation agreement, did the creditor write down its debt or otherwise impair its claim?

3. How much time elapsed between the entry of the Chapter 7 discharge and the filing of the Chapter 13?

4. Did the debtor make payments and perform obligations under the reaffirmation agreement for a period of time?

5. What are the terms of the reaffirmation agreement?

■ In this case there is no evidence that the debtors entered into the reaffirmation with the intention of filing a subsequent Chapter 13 case. Had such intention existed, the creditor could argue that it should not be bound by the terms of the reaffirmation agreement and that the Chapter 13 case was not filed in good faith to the extent that the filing of the Chapter 13 was primarily attributed to further impairing the reaffirmed debt. This argument would be particularly persuasive if the creditor had granted concessions to the debtor that the debtor could not have obtained in Chapter 13, absent the reaffirmation agreement, due to the limitation imposed by 11 U.S.C. § 1322(b)(2). Under the reaffirmation agreement, FmHA did not impair or significantly modify their rights.

The debtors were not in default of their mortgage to FmHA when they entered the reaffirmation agreement and the FmHA did not reduce its debt to a lesser amount under the agreement. There is also no evidence that the debtors entered their reaffirmation agreement intending to file a subsequent Chapter 13 case, especially considering that the debtors' Chapter 13 case was not filed until six years after the reaffirmation agreement was entered into.

Good faith is indicated in this case by the facts that six years lapsed between the Chapter 7 case and this Chapter 13 and the debtors attempted to perform its obligations under the reaffirmation agreement for a period of time.

The reaffirmation agreement does not deal with the issue of whether the filing of a subsequent Chapter 13 case would have an impact on the rights of the parties. Notwithstanding § 365(e), it seems to this court that a creditor could condition modification of its rights under a reaffirmation agreement upon strict performance by the debtor. The filing of a subsequent Chapter 13 plan inconsistent with such reaffirmation agreement would render the agreement unenforceable against the creditor and the rights of the parties would revert to whatever they had been before the reaffirmation agreement had been entered into. The parties to the reaffirmation agreement should have freedom of contract to deal with this problem and so long as the agreement does not violate the terms or policies of the Bankruptcy Code, the agreement should be enforced.

A consideration of the factors enumerated by the eighth circuit does not indicate bad faith in this case. The debtors have a surplus of only $2.00 monthly after payments of $463.00 under the Chapter 13 plan. The debtors have not sought bankruptcy relief frequently.

The cases finding bad faith relied upon by the FmHA are distinguishable. *In re Gainey, supra,* and *In re Moore, supra.* In both *Gainey* and *Moore,* the debtors were in default on their mortgage payments upon filing Chapter 7 and executing reaffirmation agreements. In *Gainey* the debtor filed a Chapter 13 only four months after his Chapter 7 filing. The debtor in *Moore* filed bankruptcy three times in three years. In this proceeding, however, the debtors were not in default of their mortgage upon filing their Chapter 7 case and entering into their reaffirmation agreement. Further, a period of six years passed between the debtors' Chapter 7 and Chapter 13 filings herein. Accordingly, the court concludes that this case was filed in good faith and that the protections afforded by Chapter 13 should be made available to the debtors.

**198**

*Bifurcation of Payments*

██ The debtors propose to bifurcate the treatment of the FmHA's mortgage by curing existing defaults with payments under the plan while making current monthly payments of principal and interest outside the plan. This violates 11 U.S.C. § 1322(b)(5). This section allows the debtor to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending" (emphasis added). Although there appears to be no decision of the Eighth Circuit Court of Appeals on point, the fifth circuit has reasoned that § 1322(b)(5) provides for the curing of a default of a mortgage only when the plan also includes the maintenance of the current mortgage payments while the case is pending. *In the Matter of Foster,* 670 F.2d 478, 489 (5th Cir.1982). *See In re Glasper,* 28 B.R. 6, 7–8 (9th Cir.BAP,1983). The debtors' Chapter 13 plan, therefore, cannot be confirmed. This deficiency may be remedied, however, by amending the plan to provide for payment of the principal and interest under the plan.

██ However, the payment of a trustee's fee is not necessarily determined by the allocation of payments inside or outside a Chapter 13 plan. Section 1326(b)(2) provides:

> Before or at the time of each payment to creditors under the plan, there shall be paid

> \*    \*    \*    \*    \*    \*

> (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under § 586(e)(1)(B) of title 28.

Regarding this, the bankruptcy court in *In the Matter of Centineo* 4 B.R. 654 (Bkrtcy. D.Neb.1980), stated:

> Here the statute clearly speaks of payments to creditors "under" the plan. While it is true that "under" the plan, the debtor may make payments either to the trustee or directly to creditors, the language of this statutory provision provides for a fee to be paid to the standing trustee in either case. The result is that whichever method of payment to credi-

tors is chosen, the trustee will receive his percentage fee.

*Centineo, supra,* at 654. Accord, *Foster, supra,* at 491; *In re Case,* 11 B.R. 843, 846 (Bkrtcy.D.Utah 1981). The trustee is not, however, always entitled to the maximum percentage fee allowable under 11 U.S.C. § 326. This is certainly the case when the trustee does not act as paying agent for claims paid directly to the creditor by the debtor.

*Failure to File Reaffirmation Agreement with Court*

██ The debtors' failure to file their reaffirmation agreement with the court in their prior Chapter 7 case does not render it unenforceable. Debtors filed their Chapter 7 case on December 23, 1981, which was prior to an amendment to the Bankruptcy Code requiring reaffirmation agreements to be filed with the bankruptcy court. *See* Section 553 of Act of July 10, 1984, Pub.Law 98–353 Title III, 98 Stat. 392. Therefore, the Bankruptcy Code as it existed prior to this amendment governs the enforceability of the debtors' reaffirmation agreement.

A separate order will be entered consistent herewith.