**In re Anna Stamper LITTON, Debtor.**

No. 7–00–03809–WSA–13.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

March 30, 2001.

Robert T. Copeland, Copeland & Bieger, Abingdon, VA, for Anna Stamper Litton.

Mark L. Esposito, Penn, Stuart, & Eskridge, Bristol, VA, for Wachovia Bank, N.A.

## MEMORANDUM OPINION

WILLIAM F. STONE, Jr., Bankruptcy Judge.

The matter before the Court is the Debtor's Motion For Reconsideration of the Court's Order entered February 9, 2001 dismissing the case following a hearing on February 5, 2001. This Motion is opposed by Wachovia Bank, N.A., successor to Central Fidelity Bank, which is the holder of a note secured by a deed of trust upon the residence and farm owned by the Debtor and her husband, James P. Litton.

The critical question is whether the Debtor should be permitted to "cure" in this Chapter 13 case a default in payment terms agreed to by the Debtor and her husband in connection with a settlement reached with Wachovia in a prior Chapter 13 case of the Debtor and a Chapter 11 case of her husband and incorporated into 2 orders entered by this Court on March 3, 2000 dealing with all pending motions for relief and adversary proceedings involving the Littons, Wachovia, and another creditor, Builders Supermarket of Abingdon, Inc. For the reasons expressed below, the Court, after duly considering the written and oral arguments of counsel, the pleadings and other documents filed in this case, and the authorities cited by the parties, has concluded that the previous dismissal of this case was correct and the Debtor's Motion should be denied.

## FINDINGS OF FACT

On May 16, 1988 the Littons granted a deed of trust upon their property located in Washington County, Virginia to Trustees for Central Fidelity Bank to secure the payment of a note of the same date payable to Central Fidelity in the amount of $193,764 with interest. Thereafter they experienced financial difficulty and on March 23, 1992 Mr. Litton filed in this Court a petition under Chapter 11 of the Bankruptcy Code. In that case an agreed order endorsed by counsel for Mr. Litton, counsel for Central Fidelity, and Mrs. Litton personally was entered on November 14, 1994 which provided for the payment of the outstanding balance on the secured note as follows:

The outstanding balance due under the May 16, 1988 promissory note, including all accrued interest, cost, fees and charges, will be re-amortized utilizing a fifteen (15) year term. The entire

obligation will balloon after a period of five years from January 31, 1994.

Pursuant to the terms of this agreement the Littons on May 11, 1995 signed a Modification And Amendment Of Deed Of Trust amending the 1988 deed of trust and providing that it secured the payment of "a certain amended and restated renewal promissory note of even date . . . in the amount of . . . ($169,107.10) to be repaid in accordance with the terms of such note or any renewal note, extension or modification, all of which are specifically permitted." A copy of such "amended and restated renewal promissory note" has not been filed, but in the absence of any indication to the contrary, the Court will assume that the terms of such note were in conformity with the terms stated in the November 14, 1994 agreed order. Accordingly, the Court finds that this restructured debt matured and became payable according to its terms no later than January 31, 2000, the Court assuming that the date stated in the Order (January 31, 1994) was actually intended to be January 31, 1995. In either case, however, the result reached in this opinion would be the same.

Mrs. Litton's first Chapter 13 case was filed on September 4, 1997 and was dismissed on March 3, 2000 pursuant to the settlement reached among the Littons, Wachovia, and Builders Supermarket. The agreed order entered in Mr. Litton's Chapter 11 case but agreed to and personally signed by Mrs. Litton, provided as follows relevant to the subject debt:

The secured claim of Wachovia Bank, N.A. ("Wachovia") is fully secured and the outstanding balance due thereunder as of January 18, 2000 was $205,805.11, including accrued interest, costs, fees and charges through said date. Upon entry of this order, the debtor shall tender a payment of $10,000 to Wachovia Bank, N.A. which payment is acknowl-

edged by Wachovia and shall be applied to accrued interest. Interest shall continue to accrue at the current rate. The debtor shall further pay on or before June 30, 2000 the additional sum of $55,000 which shall be applied to accrued interest, late charges and fees. In the event the debtor tenders the sum of $65,000 to Wachovia on or before June 30, 2000, the remaining outstanding balance due as upon its claim as of May 31, 2000 and all fees accrued thereafter shall be re-amortized utilizing a 15-year term and the residential mortgage interest rate afforded by Wachovia Bank as of June 30, 2000 with annual payments of at least $10,000 commencing on January 1, 2001 and on January 1 of each year thereafter with the entire obligation to mature via balloon payment five (5) years from the date of this order or one (1) year after construction of improvements to the Interchange for Exit 17 of Interstate I–81 in Abingdon, Virginia, whichever occurs first. In the event the debtor fails to tender to Wachovia the total sum of $65,000 by June 30, 2000, it shall be entitled to enforce its non-bankruptcy rights and remedies with respect to its collateral pursuant to the amended deeds of trust and other instruments contemplated hereby. . . . Further, to the fullest extent permitted by law, the debtor and Anna S. Litton do hereby agree that they shall not seek any further modification of the terms of the order or the treatment and terms of payment of the secured claim of Wachovia . . . . The terms of this order shall be binding upon the debtor, Anna S. Litton and any trustee appointed in this or any subsequent bankruptcy proceeding instituted by the debtors.

Unfortunately, the Littons were unable to pay the $55,000 payment scheduled due by June 30, 2000, according to the Debtor's Motion because Mr. Litton was unable by

such date to obtain a reasonable offer for the purchase from them of certain timber on the property which they had planned to sell to generate the funds needed to pay Wachovia. Although Wachovia waited for some period of time before attempting to enforce its deed of trust, several months thereafter it did commence foreclosure proceedings which were halted just prior to the scheduled sale by Mrs. Litton's filing of the present Chapter 13 case on November 21, 2000. Her proposed Chapter 13 Plan was to pay Wachovia $10,000 by 1/1/2001 and $55,000 within 30 days as follows:

> The term of this plan shall be three months. Debtor has fallen into arrears with Wachovia Bank which threatens foreclosure. Therefore, Debtor proposes to catch up in arrearages in payments to Wachovia Bank ($55,000) and Builders Supermarket ($3,000) within 30 days, and to make regular payments as called for in the agreement with them. The Trustee's commission will be added to all payments made through the Trustee. The case will then be concluded. General unsecured creditors will receive 100% of any allowed claims. Debtor will comply in all other respects with the Agreed Orders of 3/3/2000 entered by Judge Stone in prior Ch. 13 and Ch. 11 cases.

Wachovia filed an objection to confirmation and a Motion For Relief From Automatic Stay. The Chapter 13 Trustee also filed an objection as well as a Motion to Dismiss or Convert the case to one under Chapter 7. At the confirmation hearing on February 5, 2001 at which these objections and motions were heard, the Littons established that they had already paid Wachovia and had sufficient other funds in hand in the aggregate to more than satisfy the payments which had been due to Wachovia under the settlement agreement. The Court, after concluding that the case was an improper use of the Chapter 13 process,

granted the Trustee's motion to dismiss. Counsel for Mrs. Litton then filed a timely Motion For Reconsideration with supporting affidavit. For purposes of this opinion the Court will accept the Debtor's contentions that she and her husband did all they reasonably could to fulfill their obligations to Wachovia under the settlement agreement and that they simply want to "cure" the payment which they had intended and wanted to make by June 30, 2000.

## CONCLUSIONS OF LAW

Counsel for the parties have been unable to cite to the Court, nor has the Court through its own efforts been able to find, any cases dealing precisely with the factual situation presented in this case. Debtor's counsel has provided to the Court certain opinions from Chapter 11 cases and a Chapter 12 case which are analogous to the issue presented in this case. In the case of *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir.1989), the United States Court of Appeals for the Seventh Circuit approved the prosecution of a liquidating Chapter 11 case following a failed plan of reorganization which had been confirmed in a prior Chapter 11 case, noting that "serial Chapter 11 filings are permissible under the Code if filed in good faith, as are liquidating Chapter 11 cases." 886 F.2d at 866–67. In doing so it distinguished two Bankruptcy Court decisions which had dismissed second Chapter 11 cases which were filed to modify or cure defaults under previously confirmed plans. *See In re AT of Maine, Inc.*, 56 B.R. 55, 56–57 (Bankr. D.Me.1985) and *In re Northampton Corp.*, 39 B.R. 955, 956 (Bankr.E.D.Pa.1984). In the cases of *In re Casa Loma Assocs.*, 122 B.R. 814 (Bankr.N.D.Ga.1991) and *In re Adams*, 218 B.R. 597 (Bankr.D.Kan.1998), Judges Murphy and Robinson, respectively, permitted a second Chapter 11 case filing where the second case was "filed in

good faith and as a result of unforeseen changed circumstances", 122 B.R. at 818, or as a result of "changes that were unanticipated and not reasonably foreseeable at the time of confirmation or substantial consummation", 218 B.R. at 601. *See also In re Bouy, Hall & Howard and Assocs.*, 208 B.R. 737 (Bankr.S.D.Ga.1995), stating "[w]hen an unforeseen economic change effects a significant change in the market, a second filing may be permitted." 208 B.R. at 745. In the Chapter 12 case, however, Judge Minahan declined to approve a proposed modification of a secured claim in a second Chapter 12 case which could not have been obtained in the debtors' first Chapter 12 case. *In re Harry & Larry Maronde P'ship*, 256 B.R. 913, 916 (Bankr.D.Neb.2000).

A similar issue is presented in cases dealing with a Chapter 13 filing which proposes to modify the terms of a reaffirmation agreement entered into by the debtor in a prior Chapter 7 case. Modification was allowed in the case of *Matter of Weber*, 114 B.R. 194 (Bankr.D.Neb.1988) where six years lapsed between the Chapter 7 case and the Chapter 13 case, there was no evidence that the debtors entered into the reaffirmation agreement with the intention of filing a subsequent Chapter 13 case, and the secured party had not agreed in the reaffirmation agreement to impair or significantly modify its rights, 114 B.R. at 197. The Court noted that a different case would have been presented "if the creditor had granted concessions to the debtor that the debtor could not have obtained in Chapter 13, absent the reaffirmation agreement ..." *Id.* The holding of *In re Hotujac*, 102 B.R. 733 (Bankr.W.D.Mo. 1989) upon a finding of fact of the debtor's good faith, permitted a modification in a following Chapter 13 case of the terms of a debt which had been reaffirmed, apparently but not clearly upon the original terms of payment, in a prior Chapter 7 case.

The paucity of cases dealing with modification of debt terms in successive Chapter 13 cases likely is attributable to the three to five year term of confirmed plans and the debtor's ability to obtain a modification of the terms of the confirmed plan pursuant to 11 U.S.C. § 1329 upon a showing of "changed circumstances". *In re Moseley*, 74 B.R. 791, 799 (Bankr.C.D.Cal.1987) and *In re Davis*, 34 B.R. 319, 319–20 (Bankr. E.D.Va.1983). In Mrs. Litton's first case no Chapter 13 plan was actually confirmed and such case was dismissed on the basis of the agreed settlement.

In addition to the general principles gleaned from a review of the cases noted above, this Court finds helpful the analysis of Judge Grant in the Chapter 12 case of *Matter of Grogg Farms, Inc.*, 91 B.R. 482 (Bankr.N.D.Ind.1988) where a confirmed plan had expressly provided that should the debtor be more than thirty days in default in making a payment to a designated secured creditor as provided in the plan, the creditor would be entitled to entry of an order lifting the stay after ten days' notice. The debtor then sought to modify its confirmed plan pursuant to 11 U.S.C. § 1229 to cure its default. The Court refused to permit the requested modification in response to the motion for relief upon the following rationale:

Post-confirmation modification is only warranted when an unanticipated change in circumstances affects the implementation of the plan as confirmed. The right or the opportunity to modify, thus exists only in order to address unforeseen circumstances whose consequences are not provided for by the plan as originally written and confirmed. If the plan anticipates a particular event and addresses the rights and duties of the parties, should that event occur, there is no need to modify. Instead, one

only needs to implement the contingency provisions contained in the original plan.

In this case, the debtor's default, while unfortunate, was not unforeseen. The plan, as written and confirmed, specifically recognizes the possibility that the debtor might not be able to comply with its provisions. In this event, should a default exist for more than thirty days, Phoenix Mutual is entitled to the entry of an order terminating the stay. That it should have done so in this instance cannot be considered either unexpected or unforeseen. Relief from the stay would, thus, fulfill the legitimate expectations of *both* the debtor and the creditor, given the terms of the confirmed plan.

This court therefore holds that where a confirmed plan specifically provides that a secured creditor shall be relieved of the automatic stay in the event of default, the debtor may not modify the plan, in order to avoid the consequences of that default, over the objection of the affected creditor. To permit modification would not only frustrate the parties' legitimate expectations, as set forth in the plan, but would also allow the debtor to assert rights which are inconsistent with those given it under the confirmed plan. Where the creditor objects, the proper course of action is to implement the terms of the confirmed plan.

91 B.R. at 485.

The Court acknowledges that the Debtor did not file the present case simply to frustrate the foreclosure and without any legitimate intent to perform her proposed plan, but rather in conjunction with her husband she did take those actions necessary to perform under her proposed plan, and therefore at least to that extent filed her case and proposed her plan in good faith. Nevertheless, the Court believes that its original decision granting the Trustee's Motion to Dismiss was proper for the following specific reasons, any one of which would be sufficient to justify such action:

1. Because the terms of the agreed order were expressly made binding upon Mrs. Litton in the original Chapter 13 case and "any subsequent bankruptcy proceeding", the confirmation of her proposed plan or of any amended plan seeking to reinstate the bargain with Wachovia would of necessity be contrary to the provisions of the agreed orders entered on March 3, 2000 in that such plan would grant her an extension beyond the filing date of November 21, 2000 to pay a $55,000 payment which under the terms of such orders had to be paid by June 30 of that year. The possibility of a second filing having been expressly contemplated and provided for, this Court is bound to uphold such provision in this case.

2. There has been no showing of a change in underlying circumstances or conditions not reasonably foreseeable at the time of entry of the agreed orders on March 3, 2000. To be sure there has been a showing or at least an offer of proof of disappointed expectations of being able to sell promptly timber for the value which the Littons placed upon it, but delay in being able to turn this illiquid asset into cash was certainly foreseeable at the time the settlement was agreed upon. The due date for the $55,000 payment was one undoubtedly reached after negotiation between the parties, and the Littons, both represented by counsel, were fully capable of evaluating the risk of not being able to raise the required funds by the agreed upon date. There has been no allegation, for example, of any situation such as a casualty loss of property prior to a pre-June 30 closing date of an agreed sale of such property which was expected to produce the required funds and which event

was not reasonably foreseeable at the time the agreement was made.

3. In the agreed March 3, 2000 orders the parties expressly anticipated and provided the consequences for a failure to make the payment due June 30. To permit the Debtor to "cure" her default under the agreed order would be in effect to make a new agreement between the parties directly contrary to the provisions of their original agreement. Prior to the making of such agreement the full balance owing on the note secured by the deed of trust was already due and payable. Wachovia's agreement to restructure and extend significantly the payment terms to the benefit of the Littons was contingent upon their making a $55,000 payment by June 30. When the Littons failed to do so, Wachovia was relieved of any obligation to continue to hold open these favorable terms until the Littons could manage to take advantage of them. Even though the agreed orders did not contain any "time is of the essence" language, the amount of time which passed before the Littons were able to pay was clearly a material delay. The Court need not consider the possibly different situation which would have been presented had the Littons tendered the payment to Wachovia within 10 days, for example, of the due date. As a result of the Littons' failure to perform as agreed, the debt remained then and remains now past due and owing in full to the bank.

4. The settlement reached between the Littons, Wachovia and Builders Supermarket and memorialized in the March 3, 2000 orders bound all parties, for better or worse, to the benefit of their bargain. It might well be that the Littons during the course of the negotiations which led up to such agreement requested a date later than June 30 to raise the necessary funds and Wachovia was unwilling to agree to such a request. In any event, the point is

that the Court cannot put these parties back into the situation which existed at that time and ought to enforce the agreement which the parties did reach at that time and requested the Court to confirm by entry of orders setting forth the agreement in detail. If the debtors' side of such an agreement is open to possible later change, modification or "cure" of default of those terms which the debtors later find disadvantageous, but the creditor is obliged to honor those terms which are advantageous to the debtors, the incentive to the parties to reach an agreement of mutual compromise which they can expect the Court to uphold is drastically reduced. If the Court is unwilling to enforce the provisions of its own orders which have been agreed to and requested by the parties, the Court cannot expect creditors to make those concessions favorable to debtors which the creditors would be unwilling to offer without being reasonably assured that those provisions of the compromise favorable to such creditors will either be fulfilled or enforced. In summary, the Court believes that there are sound policy reasons to enforce agreed upon settlements both for and against all parties to them.

The Court will enter an order contemporaneously with the signing of this Memorandum Opinion denying the Debtor's Motion For Reconsideration. The Clerk is requested to send copies of this opinion as directed in said order.